No. 28,044.

W. J. FARRAR, *Appellant,* v. FRED PERKINS, *Appellee.*

(266 Pac. 751.)

Opinion filed May 5, 1928.

*Charles Stephens* and *F. E. Dresia,* both of Columbus, for the appellant.

*A. D. Neale,* of Chetopa, for the appellee.

The opinion of the court was delivered by

DAWSON, J.: This is an appeal from a judgment overruling a plea in abatement lodged against a cross petition setting up a cause of action for slander.

To develop the question presently under review it is necessary to recapitulate certain litigious matters in which plaintiff and defendant have been embroiled in the last few years, and which, in part, are already chronicled in our reports. (*Farrar v. Perkins,* 116 Kan. 374, 226 Pac. 714; id., 122 Kan. 141, 251 Pac. 440.) This litigation began on May 4, 1921, when plaintiff, W. J. Farrar, commenced an action against the defendant, Fred Perkins, in the district court

of *Labette county,* for the recovery of a sum of money which plaintiff had been compelled to pay his employer, the Missouri, Kansas & Texas Railroad Company, for freight charges on nine carloads of sheep which defendant took from the railway station at Oswego without paying the freight bill thereon—plaintiff being the railway station agent thereat at the time of defendant's so doing.

Some dilatory plea was lodged against this petition by the defendant Perkins; and on January 3, 1922, plaintiff commenced an action against defendant in the district court of *Cherokee county* on the same cause of action theretofore set up in Labette county. On January 25, 1922, defendant obtained from the district court of Labette county a restraining order to prevent plaintiff from proceeding with the action in Cherokee county. On February 6, 1922, plaintiff moved to dissolve the restraining order and to dismiss his action against defendant without prejudice and at his own costs. This motion the district court of Labette county did not allow until after defendant had an opportunity to withdraw his dilatory plea and to file an answer and cross petition to plaintiff's action. When that was effected, plaintiff's motion was granted, the temporary restraining order dissolved and plaintiff's action dismissed; and thereafter the Cherokee county action proceeded on its checkered way, and after two trials and two appeals this court ordered judgment in plaintiff's behalf. (Citations above.) Defendant's cross action for slander was not pleaded nor litigated in the Cherokee county lawsuit. As theretofore filed in the district court of Labette county, it was permitted to sleep on the docket for a few years; but on March 2, 1927, after judgment had been ordered in plaintiff's favor in the second appeal of the Cherokee county case (122 Kan. 141, decided December 11, 1926), it took on the semblance of life when plaintiff filed in the district court of Labette county a plea in abatement thereto. At the hearing of this plea counsel for the litigants joined in a stipulation covering the antecedent facts, following which the trial court overruled the plea, but stayed proceedings so as to permit its ruling to be reviewed in this intermediate appeal.

The statute invoked to justify the filing of this particular kind of plea is limited to defenses to actions involving a breach of the antimonopoly acts (R. S. 50-116); but *names* of pleadings are not important, and this pleading may be regarded as a special plea and demurrer to defendant's cross action.

The substance of the cross action is that Farrar slandered Perkins

in the city of Oswego and vicinity by stating orally to divers persons—

"Between the 17th day of February, 1921, and the 1st day of May, 1921, that Fred Perkins had robbed the plaintiff of a large sum of money; that he had stolen a large number of sheep from the yards of the Missouri, Kansas & Texas Railway Company, at Oswego, Kansas, without the knowledge or consent of the plaintiff; that he had taken such sheep away without paying the freight thereon, and in the nighttime; that he had refused to pay the charges thereon, although he owed the same; that said Fred Perkins had caused him, the plaintiff, by such actions, to lose his position as agent for the receiver of the said railway company; that said Fred Perkins had refused to pay his just and honest debts; that said Fred Perkins had acted maliciously and oppressively with and towards plaintiff, and that such actions on the part of the said Perkins were done with the malicious intent of injuring the plaintiff and causing him to lose his position as station agent.

"And defendant avers that such reports, and each of them, were so circulated by the plaintiff maliciously and with the intent of injuring and defaming and destroying the defendant, and bringing him into disrepute and ruining his reputation as a business man; and were so made by the said plaintiff when he knew that said reports and each of them were false and untrue; . . .

"The defendant avers that by reason of the conduct of the plaintiff, in the circulation of the reports hereinbefore mentioned, the defendant has been greatly damaged in the sum of $35,000."

In the plea in abatement (or demurrer) it was alleged that the matters referred to in the cross petition were connected with an unlawful contract in which defendant participated; and that the matters in controversy were *res adjudicata*, having grown out of the transactions litigated to a finality in *Farrar v. Perkins*, 122 Kan. 141, 251 Pac. 440.

It will be noted that in *Farrar v. Perkins*, supra, the action was chiefly for the recovery of money, a railway freight bill for the transportation of sheep. The chief defense to the action was the illegal contract set out in 122 Kan. at page 144. But the cross petition stated a *prima facie* cause of action for slander—Farrar's statements that Perkins "had robbed" the cross petitioner, that Perkins "had stolen" the sheep, that Perkins "had refused to pay his just and honest debts." Now, it is rather obviously true that this intemperate language, if spoken, was provoked by the conduct of Perkins in taking away the sheep from the railway yards without settling for the freight charges and in refusing to pay those charges, with the grievous consequences to Farrar for such delinquencies; but at present our only concern is with the legal questions involved.

On paper defendant did state a cross action against plaintiff; and it was regularly brought and was regularly pending and undetermined in a court of competent jurisdiction when plaintiff dismissed his action in Labette county. That dismissal had no effect on the pendency of the cross action. It is true, of course, that Perkins might have chosen to transfer his cross action to Cherokee county and might have litigated it there along with his defense to plaintiff's action for the recovery of the money due from Perkins for the freight charges. But he was not compelled to do so. Appellant invokes the rule that not only are all those matters concluded by a judgment which the parties chose to litigate, but all matters which they might have litigated, but that is not precisely what the rule is, although sometimes it is thus loosely stated. (*Stroup v. Pepper*, 69 Kan. 241, 245, 76 Pac. 825.) It is not all matters which the parties might have litigated which are concluded by a judgment between them under the *res adjudicata* rule, but all such matters as could be litigated *under the facts constituting the cause of action.* (*Snehoda v. National Bank*, 115 Kan. 836, 224 Pac. 914, and citations.) The taking away of the sheep without paying and refusing to pay the freight bill, and plaintiff's own payment of that bill, were the facts which gave rise to Farrar's cause of action against Perkins. It was the alleged slander purveyed by Farrar against the cross petitioner, calling him a robber, a sheep stealer, and a man who did not pay his honest debts, which gave rise to the cross action. The latter was a fundamentally different cause of action from the one being prosecuted by Farrar; and while under our liberal practice act it could have been litigated to a conclusion along with plaintiff's action, it was not imperative that it should be so litigated, and consequently the judgment ordered in that action does not conclude this one. In *Stroup v. Pepper*, supra, it was held:

"The rule that a judgment in bar, or as evidence in estoppel, is binding not only as to every question actually presented and considered and on which the court rested its decision, but also as to every question that might have been presented and decided, does not apply to a different cause of action between the same parties, except as to questions shown to have been actually decided in the former action." (Syl. ¶ 1.)

In the opinion it was said:

"The true rule, now well established, is that where a second action between the same parties is upon a different claim or demand the judgment in the prior action operates as an estoppel only as to those matters in issue upon the

determination of which the finding was made or the judgment rendered, and does not extend to matters which might have been, but were not, litigated and determined in the former action. The leading case on the subject in this country is *Cromwell v. County of Sac,* 94 U. S. 351, 24 L. Ed. 195, . . . [where] Mr. Justice Field said:

"'In all cases, therefore, where it is sought to apply the estoppel of a judgment rendered upon one cause of action to matters arising in a suit upon a different cause of action, the inquiry must always be as to the point or question actually litigated and determined in the original action; not what might have been thus litigated and determined. Only upon such matters is the judgment conclusive in another action.'"

In 34 C. J. 930 it is said:

"But the general rule is that a matter not decided, and not necessarily determined by the judgment, is not concluded, although put in issue by the pleadings, especially where the matter pleaded was not actually litigated, that is, supported or attacked by evidence, made the subject of the trial, submitted to the jury, or pressed upon the consideration of the court."

By logic and precedent therefore it seems clear that the circumstance that Perkins' cross action for slander might have been litigated in Farrar's action for a money judgment against Perkins does not render the matter of the alleged slander *res adjudicata* (*Newcomer v. Sibon,* 119 Kan. 358, 361, 362, 239 Pac. 1110), although the cross petition may also contain sophistical matter and exhibits which were pleaded and disposed of in *Farrar v. Perkins,* supra. These are of no consequence so far as concerns the alleged slander and the cross action based thereon.

See, also, *Lynn v. McCue,* 94 Kan. 761, 769-772, 147 Pac. 808; *Newcomer v. Sibon,* 119 Kan. 358, 362, 239 Pac. 1110; *Topeka State Bank v. Waters,* 121 Kan. 126, 245 Pac. 1028; *Gage v. Leslie,* 123 Kan. 72, 254 Pac. 362.

It follows that the trial court's ruling on the so-called plea in abatement was not erroneous, and the judgment is affirmed.