**Jerry CRUTSINGER, Plaintiff,**

v.

**Everett HESS, Defendant.**

**Civ. A. No. 74–224–C2.**

United States District Court, D. Kansas.

Feb. 24, 1976.

---

Roger D. Stanton, of Weeks, Thomas, Lysaught, Bingham & Mustain, Overland Park, Kan., James R. Martin, of Cordill & Martin, Osborne, Kan., for plaintiff.

Barton Brown, of Wallace, Saunders, Austin, Allen, Brown & Enochs, Overland Park, Kan., for defendant.

## MEMORANDUM AND ORDER

O'CONNOR, District Judge.

This case, a negligence action to recover damages for injuries allegedly sustained by the plaintiff in an automobile accident in Ellis County, Kansas, is now before the court for determination of the defendant's motion for summary judgment.

The facts giving rise to this action are relatively simple and appear to be uncontroverted. On November 3, 1972, the plaintiff was a passenger in a 1964 Ford station wagon operated by the defendant, Everett Hess, on a certain Golf Course Road several miles outside the city of Hays in Ellis County, Kansas. The parties were on a hunting expedition, and at about 9:00 a. m. they were engaged in maneuvering the defendant's car in reverse, to the east, for the purpose of picking up a hunting dog. While they were in the process of doing this, the defendant's car collided with a vehicle operated by one R. C. Williams II, who was proceeding west in his proper lane of travel. The plaintiff alleges that the accident occurred because of the defendant's negligent and careless operation of his vehicle and seeks $225,000 in damages for injuries suffered as a result thereof.

The defendant contends that the plaintiff's recovery in this case is precluded as a matter of law by the doctrines of *res judicata* and collateral estoppel. This claim is based upon the judgment rendered in the case of *Crutsinger v. R. C. Williams II and R. C. Williams, Inc.,* Case No. 15,654 (April 24, 1974) by the District Court of Ellis County, Kansas. The proceedings in that case are evidenced by certain documents, stipulated by the parties here to be genuine and authentic, that are now before this court. That action was basically identical to the one involved here, except that Crutsinger sought to recover from Williams, the driver of the other car, on various theories of negligence, *i. e.* failure to keep his vehicle under proper control, failure to keep a proper lookout for vehicles and

objects in his path, failure to reduce speed when approaching a hillcrest on a narrow roadway, failure to operate his vehicle at a speed reasonable and prudent in light of existing conditions, and failure to observe the lawful speed limit of 70 miles per hour. In defense, Williams argued that Crutsinger was contributorily negligent and therefore barred from recovery.

At trial, the state judge instructed the jury on both the plaintiff's and the defendant's theories and, more specifically, gave the following instruction on the issue of Crutsinger's contributory negligence:

"*No. 14.* Duty of vehicle passenger. If a passenger has knowledge of danger and the circumstances are such that an ordinary person would speak out or take other positive action to avoid injury to himself, then it is his duty to do what the ordinary person would do under the circumstances. Unless such knowledge and circumstances exist, he may rely upon the driver to attend to the operation of the vehicle."

The jury's verdict was returned in the form of answers to five special questions submitted by the court. It specifically found that the defendant Williams was not negligent, and the plaintiff Crutsinger was negligent, in a manner that proximately caused the collision resulting in his injury. In response to special question No. 4, the jury specified the acts of the plaintiff that it found constituted negligence, to-wit:

"It is the unanimous decision of the jury that Mr. Jerry Crutsinger did act in a negligent manner as a passenger in the Mr. Everett Hess vehicle. It is our opinion that Jerry Crutsinger should have been aware of the dangerous circumstances of Mr. Evertt [*sic*] Hess backing the car on the roadway to pick up that dog. It is our opinion that it was Mr. Jerry Crutsinger's duty to watch for oncoming traffic since Mr. Everett Hess, the driver, was preoccupied with backing the vehicle.

This is in accordence [*sic*] with the Court's instructions # 14, duty of vehicle passenger."

The trial court received and approved the verdict, and on that basis ordered that judgment be entered for the defendant Williams.

The crucial question presented by the instant motion for summary judgment is the weight or effect that should attach to the findings and judgment rendered in *Crutsinger v. Williams* in the state court. The defendant argues that the plaintiff, having once had his day in court, is collaterally estopped from relitigating the issue of his negligence since that precise question was fully and finally determined by the jury in the state court proceeding. The defendant recognizes that Kansas case law has on numerous occasions reaffirmed its adherence to the requirement of mutuality of estoppel, *i. e.* a litigant can invoke the conclusive effect of a prior judgment only if he would have been bound by it had it gone the other way. The defendant maintains, however, that the decisions of the Kansas Supreme Court indicate that it is "not necessarily irreversibly committed" to the mutuality requirement; in essence, he urges this court to abandon that rule by adopting the so-called "*Bernhard* doctrine" as enunciated in *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942). The plaintiff argues that Kansas law has shown no inclination toward forsaking the requirement of mutuality and that this court is bound by *Erie R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1973), to apply the existing substantive law of that state. It should be noted that the plaintiff does not question the finality of the earlier judgment, which does not appear to have been appealed; nor does he raise any issue regarding the propriety of the jury instructions or special verdict form utilized in that case, or argue that the jury's verdict—should we accord it collateral estoppel effect—does not dispose of the plaintiff's right to recover in the instant case.

Inasmuch as consideration of the question of mutuality of estoppel involves constitutional rights concerned with due process and the right to a jury trial, its resolution requires the application of principles of substantive, as distinguished from procedural, law. *E. g. United States v. United Air Lines, Inc.,* 216 F.Supp. 709, 726 (D.Nev.; E.D.Wash. 1962). This court is therefore obligated to abide by the substantive law of Kansas if controlling precedents in that state dispose of the issue presented here. *Erie R. Co. v. Tompkins, supra.*

It is necessary at the outset of our analysis of Kansas law in this area to identify and isolate those cases which are factually and legally relevant to the issue presented here. As a starting point, it is important to keep firmly in mind the difference—often blurred by imprecise or indiscriminate language—between the distinct doctrines of *res judicata* and collateral estoppel. The doctrine of *res judicata* has two principal aspects. First, it precludes parties or their privies from relitigating a cause of action that has been finally adjudicated by a court of competent jurisdiction. Kansas cases applying this principle of "claim preclusion"—*res judicata* in its broadest sense—are legion. *E. g., Parsons Mobile Products v. Remmert,* 216 Kan. 138, 531 P.2d 435 (1975); *Taber v. Taber,* 213 Kan. 453, 516 P.2d 987 (1973); *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 495 P.2d 1011 (1972); *Wells, Adm'r. v. Ross,* 204 Kan. 676, 465 P.2d 966 (1970); *Coffey, Adm'r. v. Gilbert,* 204 Kan. 305, 461 P.2d 747 (1969); *Jayhawk Equipment Co. v. Mentzer,* 191 Kan. 57, 379 P.2d 342 (1963); *Kansas Turnpike Authority v. Watson,* 189 Kan. 593, 371 P.2d 119 (1962); *Kenoyer v. Board of Barber Examiners,* 176 Kan. 424, 271 P.2d 267 (1954); *Miller v. Massman Construction Co.,* 171 Kan. 713, 237 P.2d 373 (1951); *Hofstetter v. Myers Construction, Inc.,* 170 Kan. 464, 227 P.2d 115 (1951); *Powell v. McChesney,* 170 Kan. 692, 228 P.2d 925 (1951); *Feldmann v. Feldmann,* 166 Kan. 699, 204 P.2d 742 (1949); *Wharton v. Zenger,* 163 Kan. 745, 186 P.2d 287 (1947); *Boyles v. Emery,* 159 Kan. 300, 153 P.2d 936 (1944); *Kearny County Bank v. Nunn,* 156 Kan. 563, 134 P.2d 635 (1943); *Stimec v. Verderber,* 152 Kan. 582, 106 P.2d 708 (1940); *Atchison & Eastern Bridge Co. v. Board of County Comm'rs,* 150 Kan. 24, 91 P.2d 34 (1939); *Levi v. Levi,* 149 Kan. 234, 86 P.2d 473 (1939); *Clark v. Layman,* 144 Kan. 711, 62 P.2d 897 (1936); *McMichael v. Burnett,* 136 Kan. 654, 17 P.2d 932 (1933); *Farrar v. Perkins,* 126 Kan. 71, 266 P. 751 (1928); *First National Bank v. Schruben,* 125 Kan. 417, 265 P. 53 (1928); *A. T. & S. F. Rld. Co. v. Comm'rs of Jefferson County,* 12 Kan. 127 (1873). Yet because this aspect of *res judicata* applies, by definition, only to successive litigation of the same cause of action by the same parties or their privies, cases in this area are not germane to the question now before this court.

*Res judicata* may also operate so that a fact or issue necessarily decided in one litigation is conclusively determined in a subsequent lawsuit on a different cause of action. Under Kansas law the operation of this latter principle, which while subsumed in the broad doctrine of *res judicata* is more precisely referred to as collateral estoppel, has traditionally been confined to cases where "mutuality" was present. In other words, only those persons who were parties or in privity with parties to an earlier action could invoke the doctrine of collateral estoppel; other parties were considered strangers to the former action and they were neither bound by nor entitled to benefit from the prior judgment. In this context of successive litigation between the same parties, the Kansas Supreme Court has had numerous opportunities in recent years to consider and apply the doctrine of collateral estoppel. *E. g., Neville v. Hennigh,* 214 Kan. 681, 522 P.2d 443 (1974); *Bud Jennings Carpets & Draperies, Inc. v. Greenhouse,* 210 Kan. 92, 499 P.2d 1096 (1972); *Hutchinson Nat'l Bank & Trust Co. v. English,* 209 Kan. 127, 495 P.2d 1011 (1972); *Burnison v. Fry,* 199 Kan. 277, 428 P.2d 809 (1967); *Herl v.*

552

*State Bank of Parsons,* 195 Kan. 35, 403 P.2d 110 (1965).

The critical Kansas case law for our purposes, however, is that examining the application of collateral estoppel principles to situations in which the parties to the subsequent litigation are neither identical to the parties in the prior action nor in privity with them. We have examined this body of law with great care and have concluded that, for reasons which will be more fully explained below, exigent Kansas case law is not dispositive of the precise issue which confronts us here. This conclusion is not reached without some difficulty, for the court fully recognizes that the Kansas Supreme Court has without significant deviation in several contemporary cases reaffirmed its adherence to the traditional requirement of mutuality. *Keith v. Schiefen-Stockham Insurance Agency, Inc.,* 209 Kan. 537, 498 P.2d 265 (1972); *Penachio v. Walker,* 207 Kan. 54, 483 P.2d 1119 (1971); *Adamson v. Hill,* 202 Kan. 482, 499 P.2d 536 (1969). *Cf. Goetz v. Board of Trustees,* 203 Kan. 340, 454 P.2d 481 (1969) ["Collateral estoppel does not require mutuality of parties." 203 Kan. at 350, 454 P.2d at 489, citing *State of Michigan v. Morton Salt Company,* 259 F.Supp. 35, 65 (D.Minn.1966), *aff'd,* 377 F.2d 768 (8th Cir. 1968)]. The factual context in which a plea of collateral estoppel is raised is the all-important determinant of whether that plea should be honored, however, and in our opinion a close analysis of these Kansas cases does not support the proposition that strict application of the mutuality doctrine is required on the facts before us.

The importance of the factual circumstances underlying the plea of collateral estoppel is perhaps best highlighted by reference to the manner in which *Bernhard v. Bank of America,* 19 Cal.2d 807, 122 P.2d 892 (1942), modified the traditional formulation of the mutuality requirement. In that case the California Supreme Court sharply distinguished "the criteria for determining who may assert a plea of *res judicata* " from "the criteria for determining against whom a plea of *res judicata* may be asserted." In reference to the latter question, that court held that due process considerations—which require that "no person be deprived of personal or property rights by a judgment without notice and an opportunity to be heard"—forbid the assertion of a plea of collateral estoppel against a person who was not a party or in privity with a party to the earlier litigation. 19 Cal.2d at 811, 122 P.2d at 894.

The California court found no such constitutional implications, however, in considering the criteria for who may assert a plea of collateral estoppel. Moreover, it concluded that there was "no compelling reason" or "satisfactory rationalization" for requiring that the party asserting the plea must have been a party or in privity with a party to the earlier litigation. It therefore substituted for the "facile formula" of mutuality the following test for the applicability of collateral estoppel:

"In determining the validity of a plea of res judicata three questions are pertinent: Was the issue decided in the prior adjudication identical with the one presented in the action in question? Was there a final judgment on the merits? Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication?" 19 Cal.2d at 813, 122 P.2d at 895.

The impact of *Bernhard* was significant. *Blonder-Tongue v. University of Illinois Foundation,* 402 U.S. 313, 324, 91 S.Ct. 1434, 1440, 28 L.Ed.2d 788, 797 (1971). Many courts, both state and federal, allowed its lead in renouncing the mutuality requirement insofar as it limited the right of a person not a party to an earlier litigation to invoke the binding effect of that judgment. Courts were especially inclined to follow *Bernhard* in circumstances where in a second action the prior judgment was invoked defensively against a plaintiff bringing suit on an issue that he had litigated and lost as a plaintiff in a prior action. *See,*

*e. g.,* Vestal, *Preclusion/Res Judicata Variables: Parties,* 50 Iowa L.Rev. 27 (1964); Currie, *Mutuality of Estoppel: Limits of the Bernhard Doctrine,* 9 Stan. L.Rev. 281 (1957); Note, 35 Geo.Wash.L. Rev. 1010 (1967). The force of the mutuality doctrine in that context has in fact been so diminished by *Bernhard* and its progeny that it would be impossible here to fully document its demise or to compile a complete bibliography of judicial and scholarly criticism of the traditional rule. *See, e. g.,* cases and articles cited in *Blonder-Tongue, supra,* 402 U.S. at 322 n.9, 323 n.10, 324 n.11, 326 n.14, 91 S.Ct. 1434, 1439, 1440, 1441, 28 L.Ed.2d 788, 795, 796, 797, 798. Our task here is to determine whether, in light of this background, the mutuality requirement remains a viable rule of Kansas law in the circumstances presented.

The Kansas Supreme Court has had relatively few opportunities in recent years to consider the doctrine of mutuality in a factual context which squarely put that requirement in issue. The court has stated, albeit in dicta, that collateral estoppel does not require mutuality of parties. *Goetz, supra,* 203 Kan. at 350, 454 P.2d at 489. Yet on the two occasions on which the Kansas Supreme Court has directly addressed the question of whether the *Bernhard* rule should be adopted, it has refused to do so in the factual circumstances presented. *Adamson, supra; Keith, supra.* In our opinion, however, these cases neither demonstrate an unyielding adherence to the mutuality doctrine in all cases nor factually govern the question presented here.

In *Adamson,* decided in 1969, the Kansas Supreme Court first addressed itself to the *Bernhard* rule. While it declined to adopt *Bernhard* in that case, its reaffirmance of the mutuality doctrine was perhaps less than absolute, for it concluded, "In a factual situation such as is presented here we find no compelling reason to depart from our prior law." 202 Kan. at 487, 449 P.2d at 541. The factual situation to which the court referred—and which gave it considerable pause—was that although the plea of collateral estoppel was perhaps technically valid under *Bernhard,* the plaintiff there (who was not a party to the earlier litigation) sought to use the plea of collateral estoppel as a sword to establish the defendant's negligence and thus liability. Such offensive use of collateral estoppel, as we noted above, has been generally disfavored by the courts even in cases where the requirements of due process are otherwise satisfied from a constitutional viewpoint.

The Kansas Supreme Court's discussion of *Bernhard* in *Keith,* decided in 1972, was cursory; it merely noted that for reasons stated in *Adamson* the court had refused to modulate the application of the principles of collateral estoppel by adopting the *Bernhard* doctrine in lieu of the doctrine of mutuality of estoppel. 209 Kan. at 545, 498 P.2d at 273. The court's refusal to apply *Bernhard* in *Keith* did not in itself, however, dispose of the question of whether the plea of collateral estoppel was valid; it was clear that the issue decided in the prior adjudication was not identical with the one presented in the subsequent litigation. Further, the court noted that since the common law claims raised in the second action could not have been presented—let alone litigated or decided—in the workmen's compensation administrative forum in which the earlier claim was decided, it would be inappropriate to attach collateral estoppel effect to the former judgment. Thus in *Keith* the Kansas Supreme Court was not squarely presented with the question of mutuality and we do not view its perfunctory refusal to embrace *Bernhard* in those circumstances as being conclusive of the issue presented here.

It is not necessary at this point to dwell in extended discussion of other Kansas cases that have recently addressed questions of *res judicata* and collateral estoppel. Suffice it to say that our inquiry and scrutiny of the Kansas law have revealed no cases in which the pure question of whether the *Bernhard* rule should be adopted has been presented. *E. g., Neville, supra* (no *Bernhard*

question since mutuality present); *Bud Jennings, supra* (same); *Hutchinson Nat'l Bank & Trust, supra* (same); *Goetz, supra* (same); *Thurman v. Trim,* 206 Kan. 118, 477 P.2d 579 (1970) (same); *Penachio, supra* (no collateral estoppel even if *Bernhard* were applicable; no identity of issues; plea raised against person not party to earlier litigation). See also, for pre-*Bernhard* cases, e. g., *Henry v. Railway Co.,* 98 Kan. 567, 158 P. 857 (1916) (like *Adamson,* plea perhaps technically proper under *Bernhard* but invoked as sword); *Probst v. Weigand,* 133 Kan. 232, 299 P. 611 (1931) (question of mutuality not dispositive of validity of plea); *Eckl v. Brennan,* 150 Kan. 502, 95 P.2d 535 (1939) (same). Further, our examination of recent federal law construing the Kansas requirement of mutuality sheds little light on the question presented here. *Mid-Continent Casualty Co. v. Everett,* 340 F.2d 65 (10th Cir. 1965) (no collateral estoppel even if *Bernhard* applicable; plea raised both as sword and against nonparty to earlier litigation).

In conclusion, it appears that the Kansas Supreme Court has not been squarely presented with the question of whether it would abandon the mutuality doctrine in favor of the *Bernhard* rule in a case—such as the one now before this court—in which the following conditions were present: (1) the issue decided in the prior action is identical to the one presented in the latter lawsuit; (2) a final judgment on the merits was rendered in the earlier action; (3) the party against whom the plea of collateral estoppel is asserted was a party to the prior action; and (4) the doctrine of collateral estoppel is invoked defensively, as a shield to liability, against a plaintiff bringing suit on an issue that he litigated and lost as a plaintiff in a prior action.

 In cases where the state law is silent on the issue presented or where "pinpoint" state law is absent, a federal district judge sitting as a state trial judge in a diversity action must endeavor to apply the law which he believes the state's highest court would declare if it

had the opportunity to do so in the case at hand. *E. g., Burgert v. Tietjens,* 499 F.2d 1 (10th Cir. 1974); *Symons v. Mueller Company,* 493 F.2d 972 (10th Cir. 1974); *Cottonwood Mall Shopping Center v. Utah Power & Light Co.,* 440 F.2d 36 (10th Cir. 1971); *Guaranty Trust Co. v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945). In doing so, a federal court is guided by several general principles. First, the court may—and should—look to all resources, including decisions of other states as well as the resident state, federal decisions, and the general weight and trend of authority. *E. g., Julander v. Ford Motor Company,* 488 F.2d 839 (10th Cir. 1973); *Cottonwood Mall, supra.* Dicta in state court decisions, while not an authoritative expression of the law of the state, is entitled to consideration by the federal court. *Estate of Goldstein v. C. I. R.,* 479 F.2d 813 (10th Cir. 1973). Finally, if state law is silent and there is a conflict of authority in other jurisdictions, the federal court construing the law of the state will assume that the state court would follow the weight of authority. *United States v. Jones,* 229 F.2d 84 (10th Cir. 1956), and numerous cases cited therein.

 This court is convinced, on the basis of the above analysis, that if the Kansas Supreme Court had the opportunity to decide the case at hand, it would not adhere to rigid application of the mutuality requirement but would embrace the sound logic of the *Bernhard* approach to mutuality in the circumstances involved here. We therefore hold that the defendant's plea of collateral estoppel is valid. The precise issue raised by the defendant's answer in this case is whether the plaintiff is barred from recovery because he acted negligently with regard to his own safety, in a manner that proximately caused the accident which produced his injuries. This precise issue was adjudicated adversely to the plaintiff in *Crutsinger v. Williams,* the prior state action in which a final judgment on the merits was rendered. The plaintiff here was also the

plaintiff in that action and the record before us contains no suggestion that in pursuing his claim in the earlier action the plaintiff lacked either the incentive or the full and fair opportunity—procedurally, substantively, and evidentially—to vigorously litigate the issue of his own negligence. We thus find no overriding considerations of unfairness to the plaintiff which dictate preclusion of the defendant's defensive plea of collateral estoppel. *Blonder-Tongue,* 402 U.S. at 333, 91 S.Ct. 1434, 1445, 28 L.Ed.2d 788, 802.

Under both Kansas law and the Federal Rules of Civil Procedure, a motion for summary judgment may be utilized to invoke the doctrine of collateral estoppel. K.S.A. § 60–256; F.R.Civ. Proc., Rule 56; *Goetz v. Board of Trustees,* 203 Kan. 340, 454 P.2d 481 (1969); *Lester v. National Broadcasting Company,* 217 F.2d 399 (9th Cir. 1954). Such a motion for summary judgment may properly be sustained if, with respect to the evidentiary matters conclusively established by a valid plea of collateral estoppel, the court finds that no genuine issue of material fact remains to be determined and that the moving party is entitled to judgment as a matter of law. Rule 56(c).

Prior to July 1, 1974, when it adopted a statutory scheme of comparative negligence as a method for determining liability and damages in negligence cases, Kansas adhered to the traditional common law rule that contributory negligence on the part of the plaintiff completely barred his recovery for injuries caused by ordinary negligence, as opposed to willful and wanton misconduct, on the part of the defendant. *E. g., Long v. Foley,* 180 Kan. 83, 299 P.2d 63 (1956); *Horn v. Chicago, R. I. & P. R. Co.,* 187 Kan. 423, 357 P.2d 815 (1961); *Horton v. Montgomery Ward,* 199 Kan. 245, 428 P.2d 774 (1967); *Byers v. Hesston Appliance,* 212 Kan. 125, 509 P.2d 1151 (1973); *Friesen v. Chicago, R. I. & P. R. R.,* 215 Kan. 316, 524 P.2d 1141 (1974). The plaintiff's cause of action here arose before the comparative negligence statute, K.S.A. 1974 Supp. § 60–258a, became effective, and his right to recover must therefore be gauged by the standards of the prior law.

We hold that under these standards the defendant is entitled to prevail on his motion for summary judgment. First, it is conclusively established as a result of the adjudication in *Crutsinger v. Williams* that the negligent failure of the plaintiff to watch for oncoming traffic was a proximate cause of the accident in question. Second, the plaintiff's complaint raises no issue as to the existence of any wanton or willful misconduct on the part of the defendant which might entitle the plaintiff to recover in spite of his own negligence. Further, aside from the fact that gross negligence is not pleaded, we think it is clear as a matter of law that the facts alleged here simply would not support a claim that the defendant acted wantonly, *i. e.* with knowing and utter indifference to the safety of others. *E. g., Frazier v. Cities Service Oil Co.,* 159 Kan. 655, 157 P.2d 822 (1945); *Clark v. Hildreth,* 179 Kan. 243, 293 P.2d 989 (1956). Finally, we perceive no theory—and certainly the plaintiff has advised us of none—under which on these facts the plaintiff might recover if collateral estoppel effect should be accorded the earlier judgment.

Accordingly, for all of the reasons set forth above, the court finds that the defendant has raised a valid plea of collateral estoppel by way of his motion for summary judgment; that there remain to be decided in this case no genuine issues of material fact; and that the defendant is entitled to judgment as a matter of law. The defendant's motion for summary judgment is therefore sustained.

IT IS ORDERED that the defendant's motion for summary judgment be sustained and that this action be dismissed at plaintiff's costs. Counsel for defendant shall prepare, circulate, and present to the court an appropriate journal entry reflecting the foregoing Memorandum and Order.