**George Milam HALL and Mary Milam Hall, Plaintiffs,**

v.

**Steve DOERING, et al., Defendants.**

**No. CIV. A. 97–2203–KHV.**

United States District Court, D. Kansas.

Feb. 25, 1998.

George Milam Hall, Greeley, KS, Pro se.

Mary Milam Hall, Greeley, KS, Pro se.

Michael E Waldeck, Laura E. Thompson, Niewald, Waldeck & Brown, P.C., Kansas City, MO, for Steve Doering.

Wendell F. Cowan, Jr., Celia K. Garrett, Shook, Hardy & Bacon L.L.P., Overland Park, KS, for David Vaughn, Andy Bair, John Kersley, Anderson County Prosecuting Attorney, John Dowell, Anderson County, Kansas, Gene Highberger, Ann Callahan, Dudley Feuerborn, Howard Thompson.

Michael T. Halloran, Knipmeyer, McCann, Smith, Manz & Gotfredson, Kansas City, MO, for Bernard J. Lickteig, Mike Lickteig, Steve Lickteig.

Terry J. Solander, Garnett, KS for Kathy Feuerborn.

James D. Griffin, Scott R. Ast, Blackwell, Sanders, Matheny, Weary & Lombardi L.L.P., Overland Park, KS, for Terry J. Solander.

Lee H. Tetwiler, Winkler, Lee, Tetwiler & Domoney, Paola, KS, for Crown Realty of Kansas, Inc., Janie Burkdahl, Willie Duethman.

M. Joan Klosterman, James C. Morrow, Myerson & Morrow, Kansas City, MO, for Anderson County Review, Garnett Publishing, Inc., Duane Hicks.

## MEMORANDUM AND ORDER

VRATIL, District Judge.

In its *Memorandum and Order* (Doc. # 200) entered January 5, 1998, the Court addressed the parties' various motions to dismiss *Plaintiffs' Second Amended Complaint* (Doc. # 152) filed October 9, 1997. *See Hall v. Doering, et. al,* No. Civ.A.97–2203–KHV, 1998 WL 58874 (D.Kan. January 6, 1998). As the case now stands, plaintiffs claim that Terry Solander denied and conspired to deny their constitutional rights under 42 U.S.C. § 1983 and conspired to commit fraud; that Steve Doering denied and conspired to deny their constitutional rights under 42 U.S.C. § 1983, committed and conspired to commit fraud, intentionally and negligently inflicted emotional distress, and intentionally interfered with prospective business relations in violation of state law; and that the Lickteig defendants denied and conspired to deny their constitutional rights under 42 U.S.C. § 1983, conspired to commit fraud, and intentionally interfered with prospective business relations in violation of state law (the latter claim being advanced only against Bernard Lickteig). The matter comes before the Court on the *Second Motion For Summary Judgment Of Terry Solander* (Doc. # 208), *Defendant Steven B. Doering's Motion For Judgment On The Pleadings* (Doc. # 212), *Defendant Steven B. Doering's Motion For Summary Judgment* (Doc. # 214), and the *Motion For Summary Judgment Of Separate Defendants Bernard Lickteig, Mike Lickteig And Steve Lickteig* (Doc. # 207), all filed January 9, 1998. The matter also comes before the Court on plaintiffs' cross motion for summary judgment, *see Motion For Summary Judgment Pursuant To Federal Rule of Civil Procedure Rule 56(a) and (c)* (Doc. # 210) filed January 9, 1998.

Having considered the arguments of record, the Court finds that defendants' motions should be sustained for the reasons stated below.

### Factual Summary

At the outset, the Court notes that in responding to defendants' motions for summary judgment, plaintiffs have failed to comply with the scheduling order and the local rules which govern the summary judgment process. D. Kan. Rule 56.1 provides in relevant part as follows:

A memorandum in opposition to a motion for summary judgment shall begin with a

section that contains a concise statement of material facts as to which the party contends a genuine issue exists. Each fact in dispute shall be numbered by paragraph, shall refer with particularity to those portions of the record upon which the opposing party relies, and, if applicable, shall state the number of movant's fact that is disputed. All material facts set forth in the statement of the movant shall be deemed admitted for the purpose of summary judgment unless specifically controverted by the statement of the opposing party.

Plaintiffs have not specifically controverted defendants' statements of facts under D. Kan. Rule 56.1 in a manner sufficient to raise a genuine issue of material fact.[1] *Wisner v. Unisys Corp.*, 917 F.Supp. 1501, 1504 (D.Kan.1996)(response which set forth 17 independent statements of fact, and made blanket denial of movant's statements of fact "insofar as they are inconsistent" with plaintiff's factual statements, did not conform to letter or spirit of Rule 56.1); *Thompson v. City of Lawrence, Kansas*, Nos.Civ.A.93-2253–KHV, 93–2310–KHV, 1994 WL 262598, at *2 (D.Kan. May 19, 1994)(plaintiffs who purported to controvert moving party's statements of undisputed facts but failed to cite record support failed to establish genuine issue of material fact under predecessor to D. Kan. Rule 56.1).

■■■■ The Court is all too aware that plaintiffs proceed *pro se* and it shares the concern, frequently voiced by other courts, that *pro se* litigants not succumb to summary judgment merely because they fail to comply with the technical requirements involved in defending such a motion. *See Woods v. Rob-*

*erts*, 47 F.3d 1178 (Table; available on Westlaw at 1995 WL 65457)(10th Cir.1995); *Hass v. United States Air Force*, 848 F.Supp. 926, 929 (D.Kan.1994)(courts must take added precautions before ruling on summary judgment motion involving *pro se* litigant). The Court has therefore made a diligent search of plaintiffs' briefs and attachments, to determine whether genuine issues of material fact preclude summary disposition of the claims which remain in this case. By the same token, the Court is not plaintiffs' advocate and will not construct arguments or theories for them. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir.1991); *Blackford v. Kansas Employment Sec. Bd. of Review*, 938 F.Supp. 739, 741 (D.Kan.1996). Plaintiffs are held to the rules of procedure which apply to other litigants. *DiCesare v. Stuart*, 12 F.3d 973, 979 (10th Cir.1993). They cannot withstand summary judgment by relying on allegations that are unsupported by the evidence in the record. *See Thomas v. Wichita Coca–Cola Bottling Co.*, 968 F.2d 1022, 1024 (10th Cir.), *cert. denied*, 506 U.S. 1013, 113 S.Ct. 635, 121 L.Ed.2d 566 (1992).

Accordingly, because plaintiffs have failed to comply with D. Kan. Rule 56.1 and thereby demonstrate a genuine issue of material fact, the Court must deem all of defendants' facts to be admitted for purposes of their motions. The undisputed facts are these:

In August, 1994, Bernard Lickteig sold Mary Hall [Mrs. Hall] certain farm property in Greely, Kansas. The property contained various chattels, including several horses and a mule which Bernard Lickteig

---

1. By way of example, the Court notes that in their brief in opposition to Solander's motion for summary judgment, plaintiffs simply state that "[b]ecause of the subterfuge of [defendant's attorney], plaintiffs summarily oppose and dispute as contraverted [sic] facts each and every allegation on pages 3, 4 and 5" of defendant's motion. Plaintiffs similarly respond to the motions by Doering and the Lickteigs. Such blanket denials, without citation to evidence of record, are insufficient to raise a genuine issue of material fact.

Plaintiffs cite record evidence in certain instances, but the evidence which they cite is either immaterial or does not prove what plaintiffs say

it proves. Thus, while plaintiffs try to establish genuine issues of material fact, their efforts are unavailing. For example, plaintiffs cite Doering's affidavit testimony and a subsequent letter to Vaughn, as proof that Doering conspired with a state law enforcement officer to violate their rights. Neither document, however, supports plaintiffs' position. Moreover, plaintiffs explicitly concede their failure to controvert portions of the record on which defendants rely. For example, in responding to the Lickteigs' motion, plaintiffs state, "we do not have to examine the newly created exhibits and affidavits from defendants prepared on January 8, 1998."

kept on the property. Mrs. Hall and Bernard Lickteig had an oral agreement that he would rent a portion of the pasture located on her farm, and he paid pasture rent for one year beginning November 1, 1994. On April 21, 1995, Doering, acting as attorney for Bernard Lickteig, contacted Sheriff David Vaughn to request that he or one of his deputies conduct a "civil standby" at Mrs. Hall's farm so that Bernard Lickteig could remove the animals which belonged either to him or to the estate of the Lickteig children [the conservatorship]. Doering made the request because Bernard Lickteig was concerned that Hall might become violent. Doering told Vaughn that he was not requesting assistance with the actual removal of the animals or any other property, and that if anyone objected to the removal of the animals, the removal should stop and "they"—apparently the sheriff or deputy sheriff and Bernard Lickteig—should leave the premises. In a letter to Vaughn dated April 21, 1995, Doering reiterated Bernard Lickteig's desire to remove the animals from plaintiffs' farm. Doering enclosed documentation that Bernard Lickteig had paid Hall the pasture rent, thus satisfying any claims for a lien that Hall might assert over the animals. Doering also enclosed the letter from the conservator which authorized Bernard Lickteig to remove the animals which belonged to the conservatorship.

Later that day, the sheriff's office instructed Deputy Sheriff Andrew Bair to accompany Bernard Lickteig to the farm on April 22, 1995, to "stand by" in the event of a disturbance. Bair did so, along with Steve Lickteig. Mike Lickteig did not go to the farm, and he did not communicate with Vaughn, Bair, or anyone else regarding removal of the animals. Plaintiffs were not at the farm. When Bair got to the farm, he parked his car next to the pasture gate, and stood next to Bernard Lickteig's truck while the Lickteigs removed the animals.[2] Bair did not go onto the property, and he did not see either of the Lickteigs enter any of the buildings on the property. The Lickteigs did not ask Bair to help them corral or remove the animals. Bair had no intention of helping and he did not do so. After they removed the animals, Steve Lickteig left, followed by Bair then Bernard Lickteig. Plaintiffs claimed to hold a security interest in the animals under Kansas law,[3] and the horses were removed without their consent.

On April 24, 1995, Vaughn wrote a letter to the county attorney which noted that on April 19 and 20, 1995, Hall had sought his assistance regarding the dispute with Bernard Lickteig. Vaughn reported that he had told Hall that the dispute was a civil matter and advised Hall to consult a lawyer. Vaughn also stated that Doering had requested a "civil standby" to ensure that "no trouble would occur," and confirmed that Bair in fact had performed the "civil standby" on April 22, 1995.

On June 1, 1995, Mrs. Hall filed a suit against Bernard Lickteig and Dorothy Lickteig in the District Court of Anderson County, Kansas. See *Mary Hall v. Bernard Lickteig, et. al,* Case No. 95 C 33 %[*Lickteig* ]. In part, Mrs. Hall claimed that Bernard Lickteig had breached an agreement to convey titles to a mobile home and two trucks. At a pretrial hearing on May 10, 1996, the state court ordered Bernard Lickteig to deliver the titles to Mrs. Hall. He did not comply. In a final judgment entered June 19, 1996, the state court denied all claims of Mrs. Hall without mentioning the interlocutory order that Bernard Lickteig deliver the titles.

### Summary Judgment Standards

Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

**2.** Plaintiffs allege that Bair took an active role in the events of April 22, 1995, yet they admittedly were not present and lack personal knowledge of any such fact. Such allegations are merely conclusory and insufficient to establish genuine issues of fact. *See Hall,* 935 F.2d at 1111 (nonmovant's affidavits must be based on personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient).

**3.** K.S.A. § 58–207 provides in pertinent part that persons who feed horses and other livestock shall have a lien upon such livestock for the feed and care which they give to the animals.

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c). *See Hall,* 997 F.Supp. 1445 n. 7.

### Analysis

#### A. Claims Under 42 U.S.C. § 1983

■ In its memorandum and order of January 5, 1998, which overruled defendants' motions to dismiss plaintiffs' claims under 42 U.S.C. § 1983, the Court noted that Section 1983 requires proof that some person, acting under color of state law, deprived plaintiffs of a federally protected right. *Jenkins v. Wood,* 81 F.3d 988, 994 (10th Cir.1996); *Houston v. Reich,* 932 F.2d 883, 890 (10th Cir.1991); *Blomberg v. Schneiderheinz,* 632 F.2d 698, 699 (8th Cir.1980)(action under color of state law not sufficiently pleaded where plaintiffs failed to allege that misconduct related to official duties of sheriff). Defendants now claim that plaintiffs cannot satisfy the state actor requirement and that they are entitled to summary judgment on that ground.

■ All defendants are private individuals. Consequently, in order to show activity under color of state law, plaintiffs must establish that either Vaughn or Bair participated in joint activity with at least one defendant to violate their federally protected rights. *Carey v. Continental Airlines, Inc.,* 823 F.2d 1402, 1404 (10th Cir.1987)(private person becomes state actor for purposes of Section 1983 only if jointly engaged with state officials in prohibited action); *Mann v. Baalman,* No. 86–1655–K, 1988 WL 166237, *3 (D.Kan.1988); *see also Blum v. Yaretsky,* 457 U.S. 991, 1004, 102 S.Ct. 2777, 73 L.Ed.2d 534 (1982) ("[A] State normally can be held responsible for a private decision only when it has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State."). This joint action constitutes both the state action essential to establish a constitutional violation, and action under color of state law. *Carey,* 823 F.2d at 1404. The essence of the

question is this: assuming that defendants deprived plaintiffs of a federally protected right, acting jointly with either Vaughn or Bair, were those actions under color of state law? If not, plaintiffs' claims under Section 1983 must fail.

■ The Tenth Circuit has held that a person's position as sheriff does not make all of his actions under "color of law." It is only when the sheriff exercises power granted by the state that his actions become state actions. *Norton v. Liddel,* 620 F.2d 1375, 1379–80 (10th Cir.1980); *Brown v. Chaffee,* 612 F.2d 497, 501 (10th Cir.1979)(for purposes of Section 1983, action under color of state law is exercise of power possessed by virtue of state law and made possible only because wrongdoer is clothed with authority of state law)(quoting *Monroe v. Pape,* 365 U.S. 167, 184, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961)); *Lessman v. McCormick,* 591 F.2d 605, 609 (10th Cir.1979)(thrust of § 1983 is to protect against misuse of official power by officials such as the police); *Christian v. Belcher,* 888 F.2d 410, 414 (6th Cir.1989)(to be held liable under Section 1983, defendant must first possess power by virtue of state law); *Harris v. Rhodes,* 94 F.3d 196, 197 (5th Cir.1996)(if state officer pursues personal objectives without using power granted to him by state, he is not acting under color of state law).

Under K.S.A. § 19–813, a sheriff has the power to preserve the peace.[4] In this case, the undisputed evidence is that Bair did nothing more than "stand by" in case of a disturbance. The parties cite no Kansas law which prohibits a sheriff from "standing by" in case of a disturbance, or which declares whether "standing by" is an exercise of peace-keeping authority under Kansas law. No breach of the peace occurred and none was threatened, so the question is whether Bair's mere presence was sufficient to establish action under color of state law. We conclude that under the facts of this case, it was not. A reasonable jury would not conclude on these facts that Bair exercised his peace-keeping authority under K.S.A. § 19–

---

4. A sheriff also has the power under K.S.A. § 19–812 to "serve and execute all process, writs, precepts and orders issued or made by lawful

authority and to him directed." On this record, the exercise of that power is not at issue.

813 in a manner which constitutes state action under Section 1983.

Courts on numerous occasions have held that where police officers are merely present while private actors participate in wrongful activity, state action under Section 1983 is not established. At a minimum, the officers must aid the wrongdoers or intervene in some way. For example, in *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir.1981), police officers came between a debtor and his property as a creditor was preparing to repossess it. One officer told plaintiff to "stand back and get away" and warned plaintiff that he would go "straight to jail" if he interfered further. The Ninth Circuit Court of Appeals held that "mere acquiescence" by the police to "stand by in case of trouble" is insufficient to convert illegal repossession of property into state action under Section 1983. On the other hand, it noted, police intervention and aid in repossession—as where the officer "assists in effectuating a repossession over the objection of a debtor or so intimidates a debtor as to cause him to refrain from exercising his legal right to resist a repossession"—does constitute state action. *Id.*

Some courts have held that state involvement must be "significant" to establish action under color of state law. In *Mann v. Hillsborough County Sheriff's Office*, 946 F.Supp. 962, 966–68 (M.D.Fla.1996), police officers were present while landlords took inventory of plaintiffs' rented home. Plaintiffs returned to the home but could not enter because the landlords had changed the locks. When plaintiffs complained, the police officers ordered them to leave "to avoid getting into trouble." The district court awarded summary judgment to the landlords because the facts failed to show a conspiracy or joint action under Section 1983. In doing so, it noted that the police did not effectuate or participate in the challenged conduct, and their statement to plaintiffs was not a "threatening ultimatum." Therefore, while the police might have wronged plaintiffs by entering their home without permission and allowing their landlords to lock them out, the court concluded that action under color of state law was not present.

In *United States v. Coleman*, 628 F.2d 961, 964 (6th Cir.1980), the Sixth Circuit held that "mere acquiescence by the police to 'stand by in case of trouble'" was insufficient to convert a private repossession into state action. Noting that actions of a private party are not attributed to the state unless the state actually compels the action, the court said:

> The involvement of the police here falls far short of compulsion. The police neither encouraged nor directed Clarke to repossess the truck in a particular manner. Their presence at the scene was not an indispensible [sic] prerequisite for repossession of the truck. Their benign attendance was not designed to assist Clarke in repossession of the truck; rather, it was in furtherance of their official duties ... to anticipate and prevent any violent confrontation between debtor and creditor which repossession of collateral can entail.

*Id.* (because police did not "instigate, encourage, or participate" in private actor's search, it was outside the scope of fourth amendment). *See also Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978)(noting that Supreme Court has never held that state's "mere acquiescence in a private action converts that action into that of the State."). *See also Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510 n. 4 (5th Cir.1980)(upholding dismissal based on lack of state action where police presence at repossession was merely to calm disturbance).

■ In this case, as noted above, Bair did not interact with plaintiffs at all. His only involvement was to stand and watch as defendants removed the animals. Bair did not instigate or participate in the challenged conduct. At most, his agreement to go to the farm to keep the peace may have encouraged the Lickteigs to remove the animals by assuaging any fears for their personal safety. The Court is unconvinced, however, that mere moral support—absent affirmative acts of assistance or intervention on behalf of private wrongdoers—rises to the level of state action under Section 1983. Accordingly, the Court holds that Bair's presence at the Hall farm on April 22, 1995, was insufficient to establish action under color of state law.

■ The only remaining question is whether Vaughn did anything which might

reasonably be construed as state action under the foregoing authorities. As noted, Vaughn was not at the farm. He did direct Bair to go to the farm, and he communicated with Doering, plaintiffs and others about the dispute. On these facts, however, the Court holds as a matter of law that Vaughn did not misuse any power which he possessed by virtue of state law. *See Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979)(where property owners sued sheriff and deputy for illegal and unreasonable search of their property, sheriff not personally liable under Section 1983 on basis of search, because he did not participate directly in search).[5] The record contains no evidence that Vaughn directed or organized the removal, or that he intended Bair to help with it or prevent plaintiffs from protesting. Indeed, Vaughn understood from Doering that if plaintiffs objected, the removal would stop and defendants would leave. *See Baskin,* 602 F.2d at 1206–08; *see also Menchaca, supra* (noting lack of evidence of any history of police department "cooperation" with repossession agents or prearranged plan between defendants and police). So long as Vaughn did not improperly exercise power which he possessed by virtue of state law, plaintiffs·cannot establish liability under Section 1983. The Court therefore holds that defendants' motions for summary judgment under Section 1983 should be sustained.

## B. State Law Claims

Having dismissed the claims over which the Court has original jurisdiction, the Court exercises supplemental jurisdiction over the remaining state law claims. *See* 28 U.S.C. § 1367(c).

### 1. Fraud

As noted above, plaintiffs allege that Doering committed fraud and that Solander and the Lickteig defendants conspired with him to commit fraud on plaintiffs. These allegations arise from the fact that on April 21, 1995, Doering sent plaintiffs a letter which told them that Bernard Lickteig wanted to move the animals from their farm; that he planned to go to the sheriff's office and seek assistance in getting the animals off the property that weekend; and that if plaintiffs disagreed with the proposal, "I would appreciate hearing from you concerning this matter." Plaintiffs contend that defendants had no intention of waiting for them to respond, in that they "immediately planned [to] seize and take property of plaintiffs." In other words, defendants knew that they would remove plaintiffs' property on April 22, 1995, before plaintiffs had even received Doering's letter of April 21, 1995. *Pretrial Order* (Doc. # 182) filed November 19, 1997, at 6.

 Doering asks the Court to enter judgment on the pleadings because plaintiffs have not alleged (1) that they relied to their detriment on his misrepresentations, if any; (2) that their reliance was reasonable; or (3) that they suffered damages as a result of their reliance.[6] Under Fed.R.Civ.P. 9, allegations of fraud must be pleaded with partic-

---

**5.** The Fifth Circuit in *Baskin* further held that the sheriff was potentially liable under Section 1983 on the basis of his participation in obtaining the warrants and organizing the search party, but remanded the issue because the trial court had failed to make express findings as to whether the actions violated Section 1983. This case presents a different factual situation. No warrant was involved in this case, and nothing in the record indicates that Vaughn organized the removal of the animals.

**6.** Doering's motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss under Rule 12(b)(6). *Mock v. T.G. & Y.,* 971 F.2d 522, 528 (10th Cir.1992). In reviewing Doering's motion, the Court assumes the veracity of the "well-pleaded factual allegations" in the pretrial order and draws all reasonable inferences in plaintiffs' favor. *Shaw v. Valdez,* 819 F.2d 965, 968 (10th Cir.1987); *see Zinermon v. Burch,* 494 U.S. 113, 118, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990). The issue is not whether plaintiffs ultimately will prevail, but whether plaintiffs are entitled to offer evidence to support their claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974), *overruled on other grounds, Davis v. Scherer,* 468 U.S. 183, 104 S.Ct. 3012, 82 L.Ed.2d 139 (1984). The Court may dismiss a case for failure to state a claim only if it appears beyond a doubt that plaintiffs can prove no set of facts in support of their theory of recovery that would entitle them to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957).

ularity. Under Kansas law, plaintiffs in a fraud case must prove by clear and convincing evidence five elements (1) an untrue statement of fact, (2) known to be untrue by the party making it, made with the intent to deceive or recklessly made with disregard for the truth, (3) where another party justifiably relies on the statement to his or her detriment and (4) acts to his injury, and (5) damage. *Albers v. Nelson*, 248 Kan. 575, 579, 809 P.2d 1194, 1198 (1991); *Tetuan v. A.H. Robins Co.*, 241 Kan. 441, 465–67, 738 P.2d 1210, 1228–30 (1987); *Moore v. State Bank of Burden*, 240 Kan. 382, 389, 729 P.2d 1205, 1211 (1986); *Nordstrom v. Miller*, 227 Kan. 59, 65, 605 P.2d 545, 551–52 (1980). Stated otherwise, to make an actionable case for fraud, plaintiffs must plead and prove misrepresentations of fact known by defendant to be untrue, or made with reckless disregard for the truth, and plaintiffs must have reasonably relied upon the misrepresentations to their detriment. *Tetuan v. A.H. Robins Co.*, 241 Kan. at 467, 738 P.2d at 1230.

■ The sole factual misrepresentation that plaintiffs allege against Doering is his statement that "[i]f you disagree with this proposal I would appreciate hearing from you concerning this matter." Even if we assume that Doering knew the statement was untrue when he made it, plaintiffs have failed to allege facts which show justifiable reliance on Doering's statement. Further, plaintiffs admit that they did not receive the letter until after defendants had removed the animals, and they do not allege how they relied to their detriment, that is, what actions they reasonably took or failed to take in reliance on Doering's misrepresentation.

For these reasons, the Court finds that plaintiffs have failed to state an actionable claim for fraud against Doering.

**2. Conspiracy To Commit Fraud**

■ A civil conspiracy is not actionable without commission of some wrong giving rise to a cause of action independent of the conspiracy. *Petroleum Energy, Inc. v. Mid-America Petroleum, Inc.*, 775 F.Supp. 1420, 1429 (D.Kan.1991); *Stoldt v. City of Toronto*, 234 Kan. 957, 967, 678 P.2d 153, 161 (1984).

Where claims for the underlying wrong (giving rise to a cause of action independent of the conspiracy) are dismissed, the civil conspiracy claim must fail as a matter of law. *Monarch Normandy Square Partners v. Normandy Square Assocs. Ltd. Partnership*, 817 F.Supp. 899, 908 (D.Kan.1993); *cf. Independent Drug Wholesalers Group. Inc. v. Denton*, No. 92–2164–JWL, 1993 WL 191393, *7 (D.Kan.1993). Because the Court has dismissed the substantive fraud claim against Doering, plaintiffs' claim that Solander and the Lickteig defendants conspired with him to defraud plaintiffs must fail as a matter of law.

**3. Negligent Infliction Of Emotional Distress**

Doering argues that plaintiffs' claim for negligent infliction of emotional distress must be dismissed because plaintiffs fail sufficiently to allege negligent conduct and physical injury. The Court agrees.

■ In its order of January 5, 1998, the Court noted that plaintiffs must allege and prove negligent conduct in order to recover for negligent infliction of emotional distress. *Tyrrell v. Boeing Co.*, Civ. A. No. 91–1285–FGT, 1994 WL 114841 (D.Kan.1994). The Court also noted that Kansas law has long held that there can be no recovery for emotional distress caused by the negligence of another unless accompanied by or resulting in physical injury. *See, e.g., Schweitzer-Reschke v. Avnet, Inc.*, 874 F.Supp. 1187, 1196 (D.Kan.1995); *Anspach v. Tomkins Indus., Inc.*, 817 F.Supp. 1499, 1509 (D.Kan. 1993); *Payne v. General Motors Corp.*, 731 F.Supp. 1465, 1474 (D.Kan.1990); *Humes v. Clinton*, 246 Kan. 590, 598, 792 P.2d 1032, 1038 (1990). The purpose of the physical injury rule is to guard against fraudulent or exaggerated claims, *Maddy v. Vulcan Materials Co.*, 737 F.Supp. 1528, 1534 (D.Kan. 1990); it also recognizes that emotional distress is a common experience in life and is usually trivial, *Freeman v. Kansas State Network, Inc.*, 719 F.Supp. 995, 1001 (D.Kan. 1989).

■ In this case, plaintiffs' complaints relate exclusively to intentional misconduct.

Because plaintiffs have not alleged negligent conduct, and they do not allege that Doering caused physical injury to either plaintiff, the claim for negligent infliction of emotional distress must fail as a matter of law.

### 4. Intentional Infliction Of Emotional Distress

In its memorandum and order dated January 5, 1998, the Court dismissed plaintiffs' claim for intentional infliction of emotional distress against Solander, Feuerborn and the Lickteigs, on the ground that it did not allege conduct which rose to the level of extreme and outrageous conduct under Kansas law. Based on that holding, and the fact that plaintiffs' allegations against Doering are similar to those involving Solander, Doering asks the Court to dismiss plaintiffs' outrage claim against him.

■ The Court will not repeat the elements necessary to establish a claim for intentional infliction of emotional distress. It suffices to note that as with Solander, it appears that Doering's involvement occurred in the course of his practice of law, and was limited to (1) his failure to provide titles to two trucks and a mobile home and (2) an untrue statement that plaintiffs could contact him should they disagree with the proposed removal plan. This conduct, even when viewed in light of the conclusory allegations regarding Doering's conspiracy with his codefendants, cannot be characterized as so extreme and outrageous as to permit recovery under the tort of outrage. Accordingly, the Court sustains Doering's motion for judgment on plaintiffs' claim for intentional infliction of emotional distress.

### 5. Intentional Interference With Prospective Business Relations

The apparent basis for plaintiffs' claim for intentional interference with prospective business relations is that Bernard Lickteig and/or Doering denied them the use of titles to two trucks and a mobile home.[7] Mrs. Hall first raised this issue in *Lickteig.* Specifically, she claimed that Bernard Lickteig had breached his agreement to "render valid title of the trucks to the Plaintiff" and that as a result, the trucks were "rendered valueless to Plaintiff." Mrs. Hall also claimed Bernard Lickteig had breached an oral agreement by failing to provide title to the mobile home. At one time, the state court apparently agreed that Mrs. Hall was entitled to the titles, because on April 8, 1996, it made an interlocutory order which directed Bernard Lickteig to deliver them to her. The state court later entered judgment in favor of Bernard Lickteig, holding that Mrs. Hall had failed to establish her right to damages "under any of the various theories which she put forth from the inception of this matter through trial" and that "there was no reasonable basis in fact for any of the claims" she had made. *See Lickteig,* 95 C 33 at 2. In doing so, the court adopted the findings of fact and conclusions of law which Bernard Lickteig had proposed. It specifically noted that Mrs. Hall had suffered no damages as a result of Bernard Lickteig's failure to deliver title to the mobile home, but stated no conclusions regarding the truck titles.

The factual record contains no evidence that Doering ever had the titles; on the contrary, it appears that Bernard Lickteig had them. *See Lickteig.* Plaintiffs nonetheless complain that Bernard Lickteig and Doering denied and conspired to deny plaintiffs the use of the vehicle titles "in an elaborate scheme to hurt plaintiffs and their financial enjoyment." *Pretrial Order* (Doc. # 182) filed November 19, 1997, at 5.

■ Regardless who had the titles, the result is the same. As the Court noted in its memorandum and order dated January 5, 1998, the doctrine of claim preclusion prevents parties or their privies from relitigating a cause of action that has been finally adjudicated by a court of competent jurisdiction. *American Home Assurance Co.,* 672 F.Supp. 495, 498 (D.Kan. 1987); *Crutsinger v. Hess,* 408 F.Supp. 548, 551 (D.Kan. 1976). It applies not only to claims that were actually litigated, but also to claims that should

---

7. Specifically, plaintiffs allege that "Doering has constantly conspired over a long period of time with defendant Bernard Lickteig to deny plain-tiffs the use of certain titles to property." *Pretrial Order* (Doc. # 182) filed November 19, 1997, at 5.

have been litigated in the first action but were not. *American Home Assurance Co.,* 672 F.Supp. at 498; *Jackson Trak Group, Inc. v. Mid States Port Authority,* 242 Kan. 683, 690, 751 P.2d 122, 128 (1988); *Penachio v. Walker,* 207 Kan. 54, 56–57, 483 P.2d 1119, 1121 (1971); *see also Phelps v. Hamilton,* 122 F.3d 1309, 1320 (10th Cir.1997). Claim preclusion is a bar to a second action upon the same claim, demand, or cause of action. *Penachio,* 207 Kan. at 57, 483 P.2d at 1121. It is founded upon the principle that the party, or some other with whom he is in privity, has litigated or had an opportunity to litigate the same matter in a former action in a court of competent jurisdiction. *Id.; see also Griffith v. Stout Remodeling, Inc.,* 219 Kan. 408, 548 P.2d 1238, 1240 (1976) (where two actions bottomed on same set of facts, final adjudication on merits in earlier action generally res judicata in later one).

█ Mrs. Hall's claims for breach of contract in the state court action were premised, in part, on Bernard Lickteig's failure to provide titles to the two trucks and the mobile home. The state court found no basis for any of Mrs. Hall's claims, and thus entered judgment against her. Implicit in that determination was the conclusion that Mrs. Hall either suffered no damages or that she was entitled to no relief on account of her inability to obtain the titles. More importantly, she had a full and fair opportunity to litigate before that court any claim based on the failure to convey the titles, including the present claim for intentional interference with prospective business relations. She did not advance a claim for intentional interference with prospective business relations in that action, and there is no reason to doubt the quality, extensiveness, or fairness of procedures followed in that court. *Montana v. United States,* 440 U.S. 147, 164 n. 11, 99 S.Ct. 970, 59 L.Ed.2d 210 (1979). Accordingly, she is precluded from asserting the claim against Bernard Lickteig in this case.

█ Furthermore, Doering's liability for intentional interference with plaintiffs' prospective business relations is dependent upon Bernard Lickteig's liability, either in his capacity as Bernard Lickteig's lawyer or because of his alleged conspiracy with Bernard Lickteig. Under Kansas law governing res judicata, a person who was not a party to a prior case can raise a judgment in that prior case as a bar to a subsequent action if the liability of that person is dependent upon the liability in the first case. *See, e.g., Richardson v. Erwin,* 174 Kan. 314, 255 P.2d 641 (1953) (plaintiff lost suit against driver, then sued driver's father in second case, for negligent entrustment; second suit barred, even though father not party thereto, because father's liability depended on actionable negligence by son). In this case, the basis for Doering's liability is his legal representation of Bernard Lickteig and the fact that he "constantly conspired over a long period of time with defendant Bernard Lickteig to deny plaintiffs the use of certain titles." *Pretrial Order* (Doc. # 182) filed November 19, 1997, at 5. Under Kansas agency law, a judgment in favor of a principal is conclusive between the plaintiff and an agent of the principal.[8] *Hardy v. Miller,* 131 Kan. 65, 289 P. 952 (1930) (settlement of claim against corporation and final judgment entered against corporation conclusive in a later claim against managing officers of corporation). Because Doering's liability is dependent upon Bernard Lickteig's liability in the state court action, and because the state court found no basis for any of Mrs. Hall's claims against Bernard Lickteig, it follows that Doering cannot be liable in this case either directly, or in his capacity as Bernard Lickteig's attorney. Accordingly, plaintiffs cannot litigate against Doering their claim for intentional interference with Mr's Hall's prospective business relations. Further, because Mr. Hall is in privity with Mrs. Hall,[9] for the reasons stated previously, he is likewise precluded from asserting this claim.

8. Under Kansas law, a lawyer is an agent for his client. *Brinkley v. Farmers Elevator Mut. Ins. Co.,* 485 F.2d 1283, 1286 (10th Cir.1973); *Bethany Medical Center v. Wallace, Saunders, Austin, Brown and Enochs,* 19 Kan.App.2d 1111, 1112, 880 P.2d 1289, 1290 (1994), citing *Miotk v. Rudy,*

4 Kan.App.2d 296, 300, 605 P.2d 587 (1980) ("Clearly, the relation of attorney and client is one of agency.")

9. *See Hall,* 997 F.Supp. at 1459.

IT IS THEREFORE ORDERED that the *Second Motion For Summary Judgment Of Terry Solander* (Doc. # 208) filed January 9, 1998; *Defendant Steven B. Doering's Motion For Summary Judgment* (Doc. # 214) filed January 9, 1998; and *Motion For Summary Judgment Of Separate Defendants Bernard Lickteig, Mike Lickteig And Steve Lickteig* (Doc. # 207) filed January 9, 1998; be and hereby are **sustained.**

IT IS FURTHER ORDERED that *Defendant Steven B. Doering's Motion For Judgment On The Pleadings* (Doc. # 212) filed January 9, 1998, be and hereby is sustained.

IT IS FURTHER ORDERED that plaintiffs' *Motion For Summary Judgment Pursuant To Federal Rule of Civil Procedure Rule 56(a) and·(c)* (Doc. # 210) filed January 9, 1998, be and hereby is **overruled.**