EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,
Plaintiff,

v.

FAWN VENDORS, INC., d/b/a Fawn
Vending Systems, Defendant.

Civil Action No. 94–4308.

United States District Court,
S.D. Texas,
Houston Division.

Sept. 26, 1996.

Guy D. Kidd, U.S.Equal Employment Opportunity Commission, Houston, TX, for Plaintiff.

John Thomas Kirtley, John Thomas Kirtley, III, Houston, TX, for Intervenor–Plaintiff.

Lionel M. Schooler, Gilpin Paxson & Bersch, Houston, TX, John V. Jansonius, Akin Gump Strauss Hauer & Feld, Dallas, TX, Kenneth Royce Barrett, Akin Gump Strauss Hauer & Feld, Houston, TX, for Defendant.

## ORDER

HITTNER, District Judge.

Pending before the Court is the Motion for Partial Summary Judgment filed by Defendant Fawn Vendors, Inc. and the Cross–Motion for Summary Judgment on the Issue of Kimberly Leon's Employee Status filed by Plaintiff. Having considered the motions, the submissions on file, the applicable law, and the arguments of counsel at a hearing conducted on August 29, 1996, the Court determines that Defendant's motion should be denied and Plaintiff's motion should be granted.

This is a Title VII action brought by the Equal Employment Opportunity Commission ("EEOC") against Fawn Vendors, Inc. and several related entities (collectively, "Fawn"). The EEOC alleges that Marilyn Bleman, Kathy Hendrix, and Kimberly Leon were subjected to a sexually hostile work environment and that Fawn failed to take the appropriate corrective action.[1]

Title VII makes it unlawful for an employer to discriminate against an employee on the basis of race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a)(1). Accordingly, a Title VII claim must involve an employment relationship. *Broussard v. L.H. Bossier, Inc.*, 789 F.2d 1158, 1159 (5th Cir.1986). The issue before the Court, therefore, is whether, during her association with Fawn, Leon was an employee of Fawn or merely an independent contractor.

In the Fifth Circuit, this question is resolved through application of the "economic realities/common law control" test. *Diggs v.*

---

1. Although the complaint alleged that all three women were subjected to the same impermissible conduct, the EEOC sought damages solely for Ms. Bleman and Ms. Leon. Ms. Bleman subsequently intervened as a plaintiff in the action but has since filed a motion to dismiss her claims on the basis of a settlement reached with Fawn.

*Harris Hospital–Methodist, Inc.,* 847 F.2d 270, 272 (5th Cir.), *cert. denied,* 488 U.S. 956, 109 S.Ct. 394, 102 L.Ed.2d 383 (1988). Under this test, the court must consider both the economic realities of the work relationship and the extent to which the one for whom the work is being done has the right to control the details and means by which the work is to be performed. *Id.* In addition, the court must consider eleven other factors that have a bearing on the issue:

(1) the kind of occupation, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the "employer" or the individual in question furnishes the equipment used and the place of work; (4) the length of time during which the individual has worked; (5) the method of payment, whether by time or by the Job; (6) the manner in which the work relationship is terminated; *i.e.,* by one or both parties, with or without notice and explanation; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the "employer"; (9) whether the worker accumulates retirement benefits; (10) whether the "employer" pays social security taxes; and (11) the intention of the parties.

*Id.* at 272–73 (quoting *Broussard,* 789 F.2d at 1160).

 In applying the test, no one factor is determinative, but the "right to control" is recognized as being an especially crucial factor. *Nowlin v. Resolution Trust Corp.,* 33 F.3d 498, 506 (5th Cir.1994). This "right to control" is evaluated by focussing on whether the alleged employer has the right to hire and fire the individual, the right to supervise the individual, and the right to set the individual's work schedule. *Deal v. State Farm County Mutual Ins. Co.,* 5 F.3d 117, 119 (5th Cir.1993). With all of these factors in mind, the Court turns to the issue of Kimberly Leon's employment status.[2]

Fawn is in the business of selling vending machines. In June, 1992, Fawn hired Leon as a salesperson. At that time, Leon signed a document entitled "Independent Sales Representative Agreement" (the "Agreement"). Paragraph 2 of the Agreement contains the following provision:

2. RELATIONSHIP. Representative shall use his or her special skills, which have been previously acquired, and shall conduct and manage his affairs as an independent agent. Representative shall make no use of Fawn's name or the word "Fawn" without the prior written consent of an authorized representative of Fawn. Representative's opportunity for profit or loss shall depend solely on his skill and all selling tools and equipment shall be at the exclusive expense of Representative. Representative shall be free to work according to his own methods and time and shall be free from control by Fawn. At all times, however, Representative shall conduct his activities in an ethical and professional manner.

At the beginning of her work relationship with Fawn, Leon received some training, lasting from three to five days, after which she was accompanied on her first sales call by Kevin Vogl, a Regional Sales Manager for Fawn. After that first call, Leon made all her sales calls on her own. Leon would typically go to Fawn's branch office in the morning to pick up leads and complete paperwork, spend most of the day calling on potential customers, and then return to the branch office at the end of the day. Leon was paid by commissions only, received no benefits, and had no taxes withheld from her paychecks.

 The EEOC contends that, regardless of the explicit statement in paragraph 2 of the Agreement indicating that Leon was an "independent agent," in reality, Leon was an employee of Fawn for the purposes of Title VII. The EEOC bases this contention primarily on the ground that Fawn exercised significant control over Leon's work. This Court agrees that Fawn had the right to

---

2. The ultimate determination of Leon's employment status is a question of law, although it is dependent upon factual determinations as to each factor set forth above. *Brock v. Mr. W.*

*Fireworks, Inc.,* 814 F.2d 1042, 1043–45 (5th Cir.), *cert. denied,* 484 U.S. 924, 108 S.Ct. 286, 98 L.Ed.2d 246 (1987) (evaluating employee status in the context of the Fair Labor Standards Act).

control the details and manner of Leon's work performance, and under the economic realities/common law control test, finds that Leon was an employee of Fawn.

### The Right to Control

■ The alleged employer's right to control the details and means by which work is to be performed is the most important factor under the economic realities/common law control test. *Nowlin*, 33 F.3d at 506. This right to control is evaluated by focussing on whether the alleged employer has the right to hire, fire, supervise, and set the work schedule of the individual. *Deal*, 5 F.3d at 119.

In this case, Fawn exercised the right to hire Leon. In addition, paragraph 10 of the Agreement states that Fawn had the right to fire Leon at any time.[3] The main issue, therefore, is to what extent Fawn had the right to supervise Leon and to set her work schedule.

Fawn argues that it exercised no control over the details and means of Leon's work and did not monitor or supervise her daily activities. This contention, however, is belied by the factual account of Leon's typical work day. Every morning, Leon went first to the Fawn branch office. While at the office, Leon picked up leads and completed paperwork, using Fawn's telephones, typewriters, and other office equipment. After making her sales calls for the day, Leon went back to the Fawn office to check her messages and report to the Regional Sales Manager or the Field Manager on the sales calls made that day and the status of her accounts.

Leon therefore had substantial contact with her supervisors and provided them with daily reports, through which Fawn was able to monitor and supervise Leon's sales activities. The fact, relied on so heavily by Fawn,

that Leon spent the majority of her day making outside sales calls is nothing more than a natural consequence of the type of business in which Fawn was engaged—sales through cold-calling.

Furthermore, in addition to monitoring Leon's daily activities, Fawn exercised significant control over how those activities were conducted. Fawn provided Leon with leads, thereby exercising at least some control over the parties to whom Leon would sell. More importantly, Fawn instructed Leon as to the details of the sales approach she was to take. As part of its marketing effort, Fawn instructed Leon to tell potential customers that they could finance their purchase through Inland Finance Company, a company operated out of the same location as Fawn's headquarters. Leon was given a book containing financing agreements and was told to explain to the customer how potential revenues from the vending machine could exceed monthly payments, thereby creating a positive cash flow. Leon was not free to use any sales approach she chose but instead was told only to use the Inland Finance approach. In this way, Fawn controlled the exact manner in which Leon performed the job of selling vending machines.

Finally, under the Agreement, Leon was not permitted to sell vending machines for any other company besides Fawn. Therefore, Fawn effectively controlled all of Leon's activities with respect to the sales of vending machines.

Through Fawn's daily contact with Leon and its instruction as to the details of her work, Fawn exercised the right to supervise Leon. Therefore, Fawn possessed significant control over Leon's work performance, which weighs heavily in favor of finding that Leon was an employee of Fawn rather than an independent contractor.[4]

**3.** Paragraph 10 states: "10. TERMINATION. This Agreement may be terminated by Fawn or Representative at any time. All property of Fawn shall be returned by Representative within five (5) days."

**4.** The cases cited by Fawn in favor of finding that Leon was an independent contractor deal with facts under which the alleged employer exercised significantly less control over the individual than

that exercised by Fawn over Leon. *See, e.g., Fields v. Hallsville Indep. Sch. Dist.*, 906 F.2d 1017, 1020 (5th Cir.1990) (alleged employer did not hire or fire individuals and was not involved in daily supervision), *cert. denied*, 498 U.S. 1026, 111 S.Ct. 676, 112 L.Ed.2d 668 (1991); *Mares v. Marsh*, 777 F.2d 1066, 1068 (5th Cir.1985) (alleged employer had no role in hiring, firing, or supervision of individuals); *Hickey v. Arkla Indus.*, 699 F.2d 748, 752 (5th Cir.1983) (individual

*Economic Realities* *Conclusion*

It is undisputed that Leon was paid on a commission-only basis with no salary and no benefits, and had no taxes withheld from her paychecks. Under the economic realities portion of the test, all of these details point in the direction of independent contractor status. The issue, however, is how much weight to accord these factors in light of the significant control exercised by Fawn over Leon's daily activities.

Because the alleged employer's right to control the individual's work performance is the most important factor under the economic realities/common law control test, the Court finds that the economic factors in this case are outweighed by the extent of Fawn's right to control Leon's work. In sum, the Court finds that Fawn's decisions to pay Leon on a commission-only basis, not to provide benefits, and not to withhold taxes are not enough to transform Leon from an employee into an independent contractor.

*Other Factors*

In addition to Fawn's right to control Leon's work performance, several of the other eleven factors to be considered in determining an individual's employment status point to a finding that Leon was an employee of Fawn.

First, Leon was in the occupation of sales, which is an occupation often performed under supervision rather than by a specialist. Second, Leon's occupation required very little skill, as evidenced by the fact that Leon had no prior sales experience when she was hired by Fawn. Third, Fawn provided Leon with an office that she used in the mornings and at the end of the day and provided her with access to all the equipment at the branch office. Finally, Leon's work was an integral part of Fawn's business, which was the sale of vending machines.

The Court finds that there is no genuine issue of material fact as to Kimberly Leon's employment status, and the decision on this issue depends on an evaluation of the many factors set forth in the case law. After weighing the relevant factors, with particular emphasis on the extent of Fawn's right to control Leon's work, this Court finds that Leon was an employee of Fawn and not an independent contractor. Accordingly, the Court

ORDERS that Defendant's Motion for Partial Summary Judgment is DENIED and Plaintiff's Cross–Motion for Summary Judgment on the Issue of Kimberly Leon's Employee Status is GRANTED.

dealt with other businesses besides alleged employer and was not required to account for daily activities); *Farrell v. Greater Houston Transp. Co.,* 908 S.W.2d 1, 4 (Tex.App.—Houston [1st Dist.] 1995, writ denied) (individual controlled how, when, where, and if he worked); *Diggs,* 847 F.2d at 273 (alleged employer did not direct manner or means of individual's work); *Lane v. David P. Jacobson & Co.,* 880 F.Supp. 1091, 1099 (E.D.Va.1995) (individual worked for at least one other company during her tenure with alleged employer).