## Mollie STAUDINGER, Plaintiff,

v.

## HOELSCHER, INC., Darrell Hoelscher, George Hutchens, and The City of Bushton, Kansas, Defendants.

No. 98–4117–SAC.

United States District Court, D. Kansas.

Aug. 29, 2001.

---

Cheryl D. Meyers, Topeka, KS, Michael B. Myers, Victorville, CA, for Plaintiff.

Patrick W. Neustrom, Achterberg & Neustrom, Salina, KS, David R. Cooper, Fisher, Patterson, Sayler & Smith, Topeka, KS, for Defendants.

## MEMORANDUM AND ORDER

CROW, Senior District Judge.

This case comes before the court on separate motions of the defendants for summary judgment. This is a case in which the plaintiff claims sexual harassment, sexual discrimination, deprivation of federally protected rights without due process, negligence, and the intentional infliction of emotional distress. (Pretrial Order, p. 2.) The acts which form the basis of plaintiff's sexual harassment and discrimination charges were allegedly taken by Frank Cruz, plaintiff's co-worker at Hoelscher Inc.

Plaintiff alleges, among other matters, that Hoelscher Inc., had previously fired Cruz for sexual harassment of another female, then rehired Cruz without warning her. Plaintiff claims Cruz sexually harassed her and that Hoelscher Inc. was unresponsive to her complaints about Cruz, leading her to take the matter into her own hands by loudly stating that "if Cruz did not leave her alone, she would handle the matter with a baseball bat." Soon thereafter, Hoelscher Inc., terminated plaintiff's employment for the stated reason that plaintiff had threatened Cruz, in violation of the company's non-violence policy. This suit followed.

## Summary Judgment Standards

The standards and procedures for summary judgment are well established and will not be fully repeated here. *See Celo-*

*tex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In essence, summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

Summary judgments " 'should seldom be used in employment discrimination cases.' " *O'Shea v. Yellow Technology Services, Inc.,* 185 F.3d 1093, 1098 (10th Cir. 1999) (*quoting Smith v. St. Louis University,* 109 F.3d 1261, 1264 (8th Cir.1997)). Because discrimination claims often turn on the employer's intent, courts ordinarily consider summary judgment inappropriate to settle an issue like intent, *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 530 (10th Cir.1994); *see Courtney v. Biosound, Inc.,* 42 F.3d 414, 418 (7th Cir.1994) ("[T]he summary judgment standard is applied with added rigor in employment discrimination cases, where intent and credibility are crucial issues." (quotation and citation omitted)). Even so, summary judgment is not "per se improper," *Washington v. Lake County, Ill.,* 969 F.2d 250, 253 (7th Cir.1992), and may be useful in weeding out claims and cases obviously lacking merit, *Summers v. State Farm Mut. Auto. Ins. Co.,* 864 F.2d 700, 709 (10th Cir.1988), *overruled on other grounds, McKennon v. Nashville Banner Pub. Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995).

## Facts

Controverted facts have been construed in a light most favorable to plaintiff as the non-moving party. Facts immaterial to the issues addressed herein and factual averments not properly supported by the record have been omitted.

1. Darrel Hoelscher is the president and owner of Hoelscher, Inc., a corporation. Defendant George Hutchens is the Hoelscher, Inc. plant manager. Jack Nuss is the Bushton City Marshal and sanitation engineer.

2. Hoelscher, Inc. manufactures farm machinery for stacking hay.

3. Plaintiff was employed by Hoelscher, Inc. as a plasma cutter from January 1997 until her termination on April 29, 1997.

4. Hutchens instructed plaintiff to leave the plant after her termination.

5. Hutchens told plaintiff not to reenter the plant.

6. Nuss had been called, and was in the reception area outside Hutchens office when plaintiff went into Hutchens' office and when she left.

7. After plaintiff was discharged, Hutchens told plaintiff that Marshal Nuss was there to escort her out of the building.

8. Nuss made no move toward plaintiff when she entered Hutchens' office.

9. After her termination, plaintiff used the telephone to call for a ride, left Hutchens' office, got her lunch pail, changed her shoes and left the building through the break room without re-entering the shop area.

10. Plaintiff walked outside the building to Harold Kilgore's truck to wait for a friend to arrive and give her a ride home to Ellinwood.

11. Nuss followed plaintiff out of the building.

12. Hoelscher did not instruct Nuss to stay with plaintiff until her ride came.

13. Plaintiff related the following regarding Marshal Nuss after he followed her out of the building to Kilgore's truck: "He said I was sent out here to make sure you did not try to enter the building again. I said you're kidding. He said what's going on. He had no idea other than they wanted him to come up to make sure I was escorted off of the premises is what he told me, and he stood there until my friend come to make sure I did not go back in the building, I guess. At first I thought he was just being friendly, you know, because he didn't know why they called him up there, but then I thought, well, they really thought I was going to do something."

14. Nuss did not threaten plaintiff.

15. Plaintiff was not detained by Nuss but felt that she would have been detained had she tried to re-enter the building.

16. Plaintiff told Nuss that she would have Harold Kilgore return her personal property she had left in the plant at her work area.

17. Nuss' only instruction to plaintiff was that she could not re-enter the building.

18. Nuss stood by the door to Kilgore's truck, leaning against the open door, while plaintiff sat on the seat smoking a cigarette.

19. Plaintiff did not believe Nuss would arrest her unless she tried to re-enter the building.

20. Darrell Hoelscher said nothing to plaintiff as she left Hutchens' office and left the building following her termination.

21. When plaintiff left Hutchens' office following her termination, Nuss asked if Hoelscher wanted Nuss to follow her. Hoelscher said "I guess."

22. Nuss has never been employed by Hoelscher, Inc. or Hoelscher.

23. Nuss met plaintiff for the first time the day she was terminated.

24. Nuss is employed by the City of Bushton as the City Marshal and sanitation engineer, and assists with street work, reading meters, and trimming trees.

25. Nuss does not know and has never met Franco Cruz.

26. Nuss took no action other than to stand by.

Other facts are included as necessary in the analysis which follows.

**Personal Jurisdiction**

The court will first address the claim by defendant Darrel Hoelscher, the president and owner of Hoelscher Inc., that this court lacks personal jurisdiction over him. It is undisputed that Hoelscher was not personally served a copy of the Summons and Complaint in this case, and that he was absent from work on the day the process server delivered copies of such to the Hoelscher, Inc. facility. It is further undisputed that the process server left the service papers with plant manager Hutchens, who later gave them to Hoelscher. The issue presented is whether Hutchens was authorized to accept service of process on behalf of Hoelscher.

Recognizing that service pursuant to the federal rules is necessary, plaintiff contends that service was proper pursuant to Fed.R.Civ.P. 4(e)(2). This time-honored rule states that service may be effected upon competent adult individuals as follows:

> by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process.

Plaintiff invokes the latter clause, contending that Hutchens was an agent authorized to receive service of process.

■ Plaintiff offers no evidence in support of her contention that Hutchens was Hoelscher's agent for purposes of service of process. Instead, plaintiff improperly attempts to shift to defendants the burden of disproving the agency relationship, in stating that "there is no evidence in the record that Hutchens was not Darrell Hoelscher's personal agent." (Dk.64, p. 36). Plaintiff cites no cases which would establish as a matter of law that a plant manager is authorized merely by virtue of that position to accept service of process for the president and owner of the plant.

■ The party asserting the validity of service bears the burden of proof on that issue. *Oltremari by McDaniel v. Kansas Social & Rehabilitative Service*, 871 F.Supp. 1331, 1349 (D. Kan.1994).

*See* 4A Charles A. Wright and Arthur R. Miller, Federal Practice and Procedure § 1083 (1987). In light of plaintiff's failure to sustain this burden, defendants' motion to dismiss all claims against Darrel Hoelscher for lack of personal jurisdiction is granted.

**Title VII**

Plaintiff has brought sexual discrimination and sexual harassment claims against Hoelscher, Inc., pursuant to Title VII and the Kansas Act Against Discrimination (KAAD). Hoelscher, Inc. contends that

during the relevant time, it lacked the requisite number of employees, so that plaintiff's claims under Title VII should be dismissed.

Section 704(a) of Title VII, 42 U.S.C. § 2000e–3(a), makes it an "unlawful employment practice for an employer to discriminate against any of its employees ... because he has opposed any practice made an unlawful employment practice by this subchapter." The term "employer" is defined as follows:

> The term "employer" means a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year ...

4 2 U.S.C. § 2000e(b). Thus, in order for plaintiff to maintain a claim under Title VII against Hoelscher, Inc., plaintiff must prove that this defendant had 15 or more employees for the requisite time.

The parties do not dispute that the relevant years are 1996 and 1997, the year of plaintiff's termination and the year preceding it. Nor do the parties dispute the accuracy of defendant's records, which show that defendant did not have fifteen or more employees for each working day in each of twenty or more calendar weeks in either such year. See Dk. 53, Hoelscher affidavit, Exh. A. Plaintiff's contention is solely that defendant should include, but did not include, its sales representatives in the count. In the event sales personnel are included, the parties agree that Hoelscher, Inc. would have fifteen or more employees for each working day in each of twenty or more calendar weeks in the relevant year. The issue posed is thus whether Hoelscher, Inc.'s sales representatives are or are not properly included

when counting the number of employees for purposes of Title VII.

■ The parties further agree that the law to be applied in deciding whether the plaintiff is an employee or an independent contractor for purposes of Title VII is the "hybrid test." See Dk. 55, p. 11–12; Dk 64, p. 14. This test was articulated by the Tenth Circuit in *Lambertsen v. Utah Department of Corrections,* 79 F.3d 1024, 1028 (10th Cir.1996), as follows:

> In determining whether a plaintiff has demonstrated an employee employer relationship for purposes of federal anti-discrimination legislation, courts have generally applied either the economic realities test or the hybrid test. *Oestman,* 958 F.2d at 305 (discussing both tests). Under the hybrid test, the main focus of the court's inquiry is the employer's right to control the "means and manner" of the worker's performance. *Id.* However, the hybrid test also looks at other factors, including: (1) the kind of occupation at issue, with reference to whether the work usually is done under the direction of a supervisor or is done by a specialist without supervision; (2) the skill required in the particular occupation; (3) whether the employer or the employee furnishes the equipment used and the place of work; (4) the length of time the individual has worked; (5) the method of payment, whether by time or by job; (6) the manner in which the work relationship is terminated; (7) whether annual leave is afforded; (8) whether the work is an integral part of the business of the employer; (9) whether the worker accumulates retirement benefits; (10) whether the employer pays social security taxes; and (11) the intention of the parties. *Id.* [footnote omitted] No single factor is conclusive.

Rather, the courts are to look at the totality of circumstances surrounding the working relationship between the parties. *Id.*

Plaintiff relies upon *EEOC v. Fawn Vendors, Inc.*, 965 F.Supp. 909 (S.D.Tex. 1996), for the proposition that having an independent contractor agreement and receiving payment only on a commission basis do not necessarily compel the conclusion that such individual is not an employee. The court places no reliance whatsoever upon this case from another jurisdiction in light of the controlling precedent found in the Tenth Circuit. However, as noted above under the hybrid test, no one factor is dispositive. The court thus looks to the totality of the circumstances surrounding the working relationship between Hoelscher, Inc. and its sales representatives.

■ The facts set forth by Darrel Hoelscher in his affidavit (attached to Dk. 53) are undisputed. They establish the following:

1. During the relevant time period, Hoelscher, Inc. used seven individuals which they considered to be independent contractors. These persons performed services consistent with their Commission Representative Agreement. ("the Agreement.") Despite the Agreement's requirement in paragraph three that the sales representatives "abide by and comply with all sales policy and operating regulations of the Company," (Dk. 53, Hoelscher affidavit exhibit A, last page), Hoelscher, Inc. has not adopted any sales policy or operating regulations pertaining to the use of the sales representatives. Dk. 53, attachment (Hoelscher affidavit).

2. Hoelscher, Inc. does not provide any materials to the sales representatives instructing them on the manner or method of selling, instructing, or promoting the product. The sales representatives are given a sales brochure and rudimentary training for product knowledge, and thereafter solicit orders for the product. They do not work under the direction of a supervisor and are not regarded by Hoelscher, Inc. as specialists. Hoelscher, Inc. does not consider their skills and services to be unique. Dk. 53, attachment (Hoelscher affidavit).

3. Hoelscher, Inc. does not furnish equipment for purposes of sales, or provide a place of work for the sales representatives. The sales representatives provide their own vehicles, offices, telephones, and equipment needed to secure sales, or to comply with any term of the Agreement. Dk. 53, attachment (Hoelscher affidavit).

4. Hoelscher, Inc.'s sales representatives are not paid by the hour, week, or month but are paid a commission based solely upon sales made pursuant to the Agreement. Sales representatives are not entitled to annual leave, sick pay, vacation pay, sick leave, or vacation leave, and do not receive any retirement or profit-sharing benefits from Hoelscher, Inc. Such individuals must secure their own tax ID number and pay their own Social Security taxes. Hoelscher, Inc.'s stated intention is for all persons performing services under the Agreement to be regarded as independent contractors and not as employees. Dk. 53, attachment (Hoelscher affidavit).

In response, plaintiff keys upon the language of the Agreement. Plaintiff alleges that the hybrid test is met because Hoelscher Inc's "Employee Handbook" is included in those policies which sales rep-

resentatives are required to follow, as alluded to in paragraph three of the Agreement. That handbook (Plaintiff's Exhibit 4) establishes operational policies for "employees" and the company's right to hire, fire and supervise them.

Defendants have established, however, that no "sales policies" or "operating regulations of the Company" for sales representatives have been adopted by Hoelscher, Inc., and that reference to company policies in paragraph 3 of the Agreement exists solely because the Agreement's language was lifted from another company's document, and was not revised as to Hoelscher, Inc. Given the fact that the Employee Handbook contains numerous matters that are undisputedly not applicable to the sales representatives, e.g., "wages," "overtime," "sick leave," "supervisors," (Plaintiff's Exh. 4, pps. 4–6), and the reasonable explanation of why the Agreement refers to sales policies and operating regulations when none exist for sales representatives, the court finds the Employee Handbook inapplicable to sales representatives.

Plaintiff additionally relies upon the Agreement's language that Hoelscher, Inc. controls the designation of the sales representatives' exclusive territory; determines the timing and amount of and entitlement to commissions; requires sales representatives to obtain credit information on new accounts, to assist in collection of certain accounts, and to repossess certain merchandise; accepts liability for their errors and omissions; and other similar matters. (Dk.64, p. 15). The court finds these details insufficient to establish that Hoelscher Inc., has the right to control the "means and manner" of the sales representatives' performance.

Although plaintiff characterizes the Agreement as a traditional employment at

will agreement, the court is quite familiar with employment-at-will agreements, and has had the benefit of reviewing this Agreement. The court does not find any resemblance between such agreements and the one at issue. The court notes, but does not find it controlling, that the Agreement states therein that the "Commission Representative warrants that he is an independent contractor and not an employee of the Company," (Dk. 53, attachment to Hoelscher affidavit), and that the Employee Handbook states that employees are employed at will. (Plaintiff's Exh. 4, p. 9).

Under the totality of the facts presented by the record, the court has no hesitation in finding that the persons in question were independent contractors and not "employees" during the relevant time, within the meaning of that term as used in Title VII. Accordingly, Hoelscher, Inc. had fewer than the requisite number of employees, and plaintiff's Title VII claims against it shall be dismissed.

Plaintiff concedes that she has brought no Title VII claims or KAAD claims against the individual defendants. (Dk.64, p. 37). The court finds that she has brought none against the City of Bushton, Kansas, which also was not her employer. Accordingly, no Title VII claims remain in the case. The basis for federal jurisdiction thus rests upon plaintiff's § 1983 claims.

## § 1983 Claims

Plaintiff alleges that the City of Bushton, Hoelscher, Inc., Hoelscher and Hutchens acting jointly, made deliberate choices which violated her constitutional rights under the first, fifth and fourteenth amendments. (Dk.64, p. 28). Plaintiff concedes that her claims under § 1983 involve only the events occurring on the date of her employment termination. (Dk.64, p. 26).

Plaintiff claims that "Hoelscher, as Mayor of Bushton, made the deliberate choice to use the power delegated to him to control and direct the City Marshal to take part in the termination events regarding [plaintiff]." (Id., p. 27). Plaintiff further contends that the City of Bushton is liable under § 1983 for Hoelscher's acts, as Mayor, because he was the final decision-maker. See Id., p. 27, 30. (respectively reciting municipal liability standard and alleging that the City of Bushton took certain acts through actions of its Mayor.)

Plaintiff further alleges that Hoelscher is liable even if he acted in his private capacity rather than in his capacity as Mayor, because he acted in joint conduct with state officials, presumably Nuss. Plaintiff relies upon this joint action doctrine as her basis for alleging that Hutchens and Hoelscher, Inc. acted under color of state law, as well. Nuss has not been named as a defendant.

**General Law**

■ 42 U.S.C. § 1983 provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State ..., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ...

In order to prevail on a § 1983 claim, a plaintiff must establish that a federal constitutional right was violated, and that the individual violating the constitutional right did so under color of state law. *Wise v. Bravo*, 666 F.2d 1328, 1333 (10th Cir.1981); *See Sutton v. Utah State Sch. for the Deaf*

*& Blind*, 173 F.3d 1226, 1237 (10th Cir. 1999). The court addresses the "color of state law" requirement first.

■ The Tenth Circuit has held that a person's position as sheriff does not make all of his actions under "color of law." It is only when the sheriff exercises power granted by the state that his actions become state actions. *Norton v. Liddel*, 620 F.2d 1375, 1379–80 (10th Cir.1980); *Brown v. Chaffee*, 612 F.2d 497, 501 (10th Cir. 1979); *See Dry v. City of Durant*, 242 F.3d 388, 2000 WL 1854140, *5 (10th Cir. Dec. 19, 2000) (Table) *citing Robinson v. Davis*, 447 F.2d 753, 759 (4th Cir.1971) ("It is plain that a state officer is not necessarily acting in his official capacity merely because he is clothed in official garb.").

■ Conversely, a defendant need not be an officer of the state in order to act under color of state law for purposes of § 1983. *See Dennis v. Sparks*, 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 152, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Rather, courts have applied four separate tests to determine whether a private party acted under color of law in causing an alleged deprivation of federal rights, one of which is the joint action test. *See Gallagher v. Neil Young Freedom Concert*, 49 F.3d 1442, 1447 (10th Cir. 1995). This is the theory upon which plaintiff proceeds.

**Hoelscher's Position as Mayor**

■ Although plaintiff alleges that Hoelscher acted in his capacity as Mayor, and thus under color of state law, in the events on the day of plaintiff's termination, the record fails to support this assertion. Hoelscher's decisions and acts that day have not been shown to have been motivat-

ed or assisted even in part by his status as Mayor, or to have had any impact whatsoever upon the City, its policies, or procedures. Plaintiff has not shown that if Hoelscher had not been Mayor, his decisions and acts would have been any different.

Nor has plaintiff shown that the City Marshal would not have responded in the same manner to Hoelsher's call for assistance in escorting plaintiff off the premises had Hoelscher not been the Mayor. No exercise of municipal authority or control is inherent in the fact that Hoelscher was also the Mayor at the time Nuss was called for assistance, and none has been shown by the record.

Thus Hoelscher's acts on the day of plaintiff's discharge have not been shown to have been the exercise of "power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West v. Atkins*, 487 U.S. 42, 49, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988), *quoting United States v. Classic*, 313 U.S. 299, 326, 61 S.Ct. 1031, 85 L.Ed. 1368 (1941). The record clearly reveals that Hoelscher's acts on the day of plaintiff's termination were solely in his capacity as president and owner of Hoelscher, Inc., and not in his capacity as Mayor.[1]

### Nuss's Position as City Marshal

The court therefore turns to plaintiff's assertion that Hoelscher and others should be deemed to have acted jointly with Nuss, to meet the state action requirement. The court first considers whether Nuss acted under color of law. Based upon the case law set forth above, Nuss's position as City Marshal does not make his every action one under color of law.

Defendants rely upon *Hall v. Doering*, 997 F.Supp. 1464 (D.Kan.1998) in contending that Nuss did not act under color of state law because he was merely keeping the peace. In *Hall*, a deputy sheriff agreed to go to a farm to keep the peace if necessary while animals were repossessed. The court found that the deputy did not instigate or participate in challenged conduct but merely "stood by" in case of a disturbance. The court held that the deputy did not exercise his peace-keeping authority under Kansas law, so that his actions were not taken under color of state law, and could not render any unlawful actions by repossessors, who were private citizens, actionable under § 1983.

As stated in *Hall*: "Courts on numerous occasions have held that where police officers are merely present while private actors participate in wrongful activity, state action under Section 1983 is not established. At a minimum, the officers must aid the wrongdoers or intervene in some way." Id., at 1471. This rule is most commonly applied in landlord or repossession cases. *See e.g., United States v. Coleman*, 628 F.2d 961, 964 (6th Cir.1980)(finding the "benign attendance" of police officers was not designed to assist in repossession of the truck; rather, it was in furtherance of their official duties to anticipate and prevent any violent confrontation between debtor and creditor which repossession of collateral can entail.); *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507, 510 n. 4 (5th Cir.1980) (upholding dismissal based on lack of state action where police presence at repossession was merely to calm disturbance); *Mann v. Hillsborough County Sheriff's*

---

**1.** The court does not determine whether Hoelscher's status as Mayor would be suffi- cient to show the requisite state action.

*Office,* 946 F.Supp. 962, 966–68 (M.D.Fla. 1996) (finding no acts under color of law where police officers were present while landlords changed the locks on plaintiffs' rented home, and officers thereafter ordered plaintiffs to leave "to avoid getting into trouble"). *See also Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 164, 98 S.Ct. 1729, 56 L.Ed.2d 185 (1978) (noting that Supreme Court has never held that state's "mere acquiescence in a private action converts that action into that of the State."). The court believes the facts here are sufficiently analogous to the above cases to warrant application of the same rule.

■ Defendants allege that on the day of plaintiff's termination, Nuss was called for the purpose of merely standing by and keeping the peace, which he did. Plaintiff counters that Nuss did more than just stand by, but participated in the challenged action by exercising his peace keeping authority, constituting state action.

Plaintiff alleges that she was "forcibly removed" from the premises, (Dk.64, p. 29), yet agrees that she walked out of the plant and that Nuss merely followed her. Plaintiff does not allege that Nuss touched her in any manner. The facts do not show that any weapon was shown or drawn, that any constraint such as handcuffs was placed on plaintiff's person, that any force was used, that any verbal threats were made, that plaintiff was physically intimidated or touched, that any restriction was placed on plaintiff's freedom of movement other than that she could not reenter Hoelscher, Inc., that psychological or other coercion existed, or that Nuss asserted his authority in any manner.

Plaintiff complains of her 30 to 45–minute detention, but the facts show that plaintiff spent this long in the parking lot after her termination only because she was awaiting a ride. No evidence shows that Nuss did anything to deter plaintiff from leaving the premises when she so desired. Plaintiff admits that at that time, she perceived Nuss as "just being friendly." Nuss did nothing other than stand in the same general vicinity as plaintiff and converse with her while she waited for her ride. Although Nuss told plaintiff that she was not permitted to reenter the building, his statement to plaintiff was not a threatening ultimatum.

The court finds no allegation in the pleadings of how Nuss misused the authority granted him as City Marshal to injure plaintiff during the events on the day of her termination from employment. Nuss did not participate in the decision to termination plaintiff's employment, and his actions did not alter plaintiff's employment conditions on a basis that infringed her constitutionally protected interest. With respect to Nuss's detention of plaintiff, the evidence indicates that his actions were consistent with his duties and authority as City Marshal and were not in violation of plaintiff's civil rights.

The undisputed evidence is that Nuss did nothing more than "stand by" in case of a disturbance. Here, as in *Hall,* the question is whether a law enforcement officer's mere presence is sufficient to establish action under color of state law. *See* 997 F.Supp. at 1490. The court concludes that under the facts of this case, it was not. A reasonable jury would not conclude on these facts that Nuss exercised his peace-keeping authority in a manner which constitutes state action under Section 1983. Nuss's involvement was not designed to aid the defendants in their termination of the plaintiff's employment; rather it was

in furtherance of his official duties to anticipate and prevent any violent confrontation between the employer and a recently terminated employee.

## Joint Action Between Nuss and Defendants

Even assuming, arguendo, that Nuss did act under color of law, the court finds insufficient evidence of his joint action with the defendants. The Tenth Circuit has held that one way to prove joint action is to demonstrate that the public and private actors engaged in a conspiracy. *See, e.g., Anaya v. Crossroads Managed Care Systems*, 195 F.3d 584, 596 (10th Cir.1999); *Hunt v. Bennett*, 17 F.3d 1263, 1268 (10th Cir.1994). Plaintiff appears to proceed upon this theory. Plaintiff's brief is vague on this issue, however, alleging solely that "there was agreement and concerted action (citation omitted)," (Dk.64, p. 28), without specifying either.

▉ When a plaintiff seeks to prove state action based on a conspiracy theory, "a requirement of the joint action charge ... is that both public and private actors share a common, unconstitutional goal." *See Anaya*, 195 F.3d at 596. In such cases, "mere conclusory allegations with no factual averments are insufficient; the pleadings must specifically present facts tending to show agreement and concerted action." *Hunt*, 17 F.3d at 1268 (citation and quotations omitted).

▉ Here, plaintiff has failed to articulate any common unconstitutional goal allegedly shared by Nuss and the defendants, or to raise a material question of fact showing agreement and concerted action between Nuss and the defendants to deprive plaintiff of her constitutional rights. Nuss was not privy to plaintiff's

situation prior to his arrival at Hoelscher, Inc. on the day of plaintiff's termination. Although Nuss and the defendants may have shared the goal on that day of effecting plaintiff's safe exit from the work premises and preventing her from reentering the facility, neither of these goals is unconstitutional. No other goal is supported by the record.

"The existence of the § 1983 remedy does not require that federal courts entertain all suits in which unconstitutional deprivations are asserted. A federal constitutional question must exist 'not in mere form, but in substance, and not in mere assertion, but in essence and effect.'" *Wells v. Ward*, 470 F.2d 1185, 1189 (10th Cir.1972) (*quoting Cuyahoga River Power Co. v. N. Ohio Traction & Light Co.*, 252 U.S. 388, 397, 40 S.Ct. 404, 64 L.Ed. 626 (1920)). In this case, plaintiff has failed to present sufficient evidence to overcome defendants' motion for summary judgment on her § 1983 claims.

Because the court holds that the defendants did not act under color of state law, it need not address the parties' other § 1983 arguments. *See Celotex*, 477 U.S. at 322–23, 106 S.Ct. 2548.

## State Law Claims

Having determined that Hoelscher, Inc. was not an employer for purposes of Title VII, and that no state action exists in this case sufficient to invoke § 1983, the court finds no basis for federal jurisdiction over the remaining state law claims. Therefore, this court declines to exercise supplemental jurisdiction over those claims, and they are dismissed without prejudice.

IT IS THEREFORE ORDERED that defendants' motions for summary judgment (Dk. 52 and 55) are granted on all of plaintiff's claims pursuant to Title VII and 42 U.S.C. § 1983.

IT IS FURTHER ORDERED that plaintiff's state law claims are dismissed without prejudice.